# COURT OF APPEALS,

## March 1916.

## THE PEOPLE v. CHARLES SPRAGUE.

(217 N. Y. 373.)

**(1.) MURDER—EVIDENCE.**

The defendant was tried upon an indictment for the crime of murder in the first degree and was convicted by the verdict of the jury. Upon examination of the record, *held*, that there was evidence to show a deliberate and premeditated design on the part of the defendant to effect the death of the deceased. The trial was fairly conducted on the part of the trial justice and the counsel. The charge of the trial justice was impartial, clear and comprehensive, and upon the entire evidence the verdict was justified.

**(2.) SAME—ERRONEOUS ADMISSION OF STATEMENT OF DECEASED THAT HE WAS SHOT BY DEFENDANT.**

Error is alleged in admitting testimony that deceased, when he reached the doorway of his home, after he was shot, in answer to the question, " What is the matter? " stated, " Charley Sprague has shot me." *Held*, that the declaration made under such conditions was not so spontaneous and natural that the truthfulness of the declarant in making it is apparent. It was untrustworthy and should not have been received. This is a case, however, for the application of the rule (Code Crim. Pro. § 542) that a judgment will not be reversed for errors at the trial which did not prejudicially affect the rights of the defendant. The dying declaration of the deceased, which was rightly received in evidence, contained the statement that the defendant shot him; his declaration in the doorway of his house added nothing to the facts presented. It follows that the erroneous admission in evidence of the declaration in question must be disregarded.

**(3.) SAME—VERDICT CANNOT BY THEIR AFFIDAVITS ATTACK A VERDICT RECORDED OR RENDERED.**

Jurors cannot by their affidavits, even if those affidavits aver their misconduct outside of the jury room, attack or discredit the verdict which they have in fact recorded or rendered. Much less can they

do so by their unsworn statements presented through the affidavits of others.

(Argued January 17, 1916; decided March 14, 1916.)

APPEAL from a judgment of the Supreme Court, rendered February 8, 1912, at a Trial Term for the county of Yates, upon a verdict convicting the defendant of the crime of murder in the first degree. Also appeal from an order of said court entered July 8, 1915, denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

*Lewis H. Watkins* for appellant.

The verdict is against the weight of evidence and contrary to any logical conclusion from the proven facts. (People v. Barker, 153 N. Y. 111; People v. Guidici, 100 N. Y. 509; People v. Driscoll, 107 N. Y. 417; People v. Corey, 157 N. Y. 332.) The irregularity of juror Hurrin in experimenting with his rifle during the trial, when the jurors were allowed to separate and go to their homes, and later communicating the result of his experiments to the other jurors, was such misconduct as calls for a reversal of the judgment of conviction. (Comm. v. McCaull, Va. Cas. 271; People v. Douglass, 4 Cow. 26; Forehand v. State, 51 Ark. 553; State v. Sanders, 68 Mo. 202.) The declarations of the deceased to his wife and to Pascal T. Van Liew, admitted as voluntary statements and part of the *res gestœ*, should have been excluded, and the testimony was highly prejudicial to the defendant, and its admission constituted reversible error. (Wood's Prac. Ev. [2d ed.] 447; 1 Rice on Ev. 375; People v. Del Vermo, 192 N. Y. 470; Patterson v. Hochester, 38 App. Div. 398.)

*Charles H. Wood, District Attorney* (*Spencer F. Lincoln* of counsel), for respondent.

The experiments of juror Hurrin, if ever made, were not prejudicial to the defendant. (People v. Gallagher, 75 App. Div. 39; 174 N. Y. 505; People v. Johnson, 110 N. Y. 144; People v. Buchanan, 145 N. Y. 1.) The statement of Martin that "Charley Sprague has shot me," made to Van Liew at the kitchen door, in the hearing of his wife, as soon as he had reached it, and to the first person seen by him after the shooting, was a voluntary, spontaneous exclamation, and properly admitted as such, and as a part of the *res gestæ.* (People v. Del Vermo, 192 N. Y. 470.)

COLLIN, J.:

The appellant was charged by indictment with the crime of murder in the first degree, committed October 17, 1911, by shooting George A. Martin with a rifle. He was tried upon the indictment and was convicted February 8, 1912, by the verdict of the jury. When assigning the present counsel for the appellant, we gave expression, in the interest of justice and its proper administration, to our condemnation of the delay, inexcusable and pernicious to the authority and influence of the law, which intervened the judgment and the presentation of the case to this court. (People v. Sprague, 215 N. Y. 266.)

The counsel for the appellant urges here with earnestness and ability that the verdict was contrary to the necessary effect of the evidence. His argument is based upon (a) the location of the appellant and the location and physical attitude of the deseased, (b) the course of the bullet in the body of the deceased, and (c) the lodging of the bullet in the arm after passing through the trunk of the body of the deceased. He seeks to convince us that the conditions in those three particulars dem-

onstrate that the bullet did not come from the rifle of the appellant. The course of the bullet through the trunk of the body of the deceased was nearly straight or horizontal from side to side approximately. It did not come in contact with any large bone, and emerging from the trunk embedded itself in the bone of the arm, splitting open the humerus, but not tearing it in pieces. The rifle of the appellant was of the Winchester type, in calibre designated a 32-40, that is, using a cartridge thirty-two one-hundredths of an inch in diameter and loaded with forty grains of black powder, seventeen grains of smokeless powder and a bullet containing one hundred and sixty-five grains of lead. The bullet which killed the deceased came from a rifle of such description. Those statements are uncontroverted. The counsel for the appellant asserts that if the bullet was fired from the rifle in the hands of the appellant, the place where the appellant stood when firing was two hundred and forty-five feet from and at an elevation of one hundred feet above the point where the deceased was, and, further, that the deceased was then standing and facing the appellant. Upon those facts he argues that a bullet which passed horizontally through the trunk of the body of the deceased from side to side and ended its course in his arm could not, of physical necessity, have gone from the rifle of the appellant; a bullet which went from the rifle of the appellant must have entered the body at its front, passed decidedly downward in its course through the body, and emerging gone through and far beyond the arm of the deceased.

The direct evidence in regard to the act of shooting is wholly in the dying declaration of the deceased and the testimony of the appellant as a witness in his own behalf at the trial. The dying declaration does not state with any aidful degree of precision the location of either of the men or the physical attitude or posture of the deceased when shot. It does not support the facts asserted by appellant's counsel. The appellant

testified: " I was carrying the rifle under my arm, the same as I was down through the woods. I came down out of the woods and looked towards the potato patch and saw Mr. Martin down there and hollered down to him and ordered him out of the potato patch. He looked up at me and slapped himself like that, and motioned to me in that way (indicating). I ordered him out three or four times and he did that every time I ordered him out, and I was walking along and the gun exploded. After the gun exploded I saw Mr. Martin turn around and walk out of the potato patch down towards the cottage, and went behind the barn down this path out of my sight. * * * I did not aim the gun to shoot him. I did not intend to shoot the gun. * * * I was carrying the gun cocked, with my finger on the trigger and a shell in the barrel. As I came out of the woods carrying the gun in that condition I saw Martin in the potato patch. Maybe two or three minutes after I first saw him, I saw him going from the potato patch to the house. All of these transactions that I have related and all the conversations I have testified to that I had with Martin took place in two or three minutes right there at that time. I ordered him out and he made some motion. I ordered him out two or three or four times and the gun went off. * * * I was in the old peach orchard at that time." It is manifest that this evidence does not support the assertions upon which the appellant's argument rests. Additional evidence described the physical condition and characteristics of the general locality and the relative locations of the potato patch, the peach orchard, the wood and the point at which the deceased was at a time an hour or more before, and where the articles used by him in the work were found after he was shot. There is not any evidence, including that of the appellant, which assumes to fix with exactness the location of either of the two men or the position or physical attitude of the deceased at the time of the shooting. Moreover, the effect of the testimony of the appellant

throughout, whether or not it was contradicted, was to be determined by the jury, because he was interested to the uttermost in the result of the trial. We cannot give the evidence upon which the appellant bases his assertions and argument the conclusiveness with which he invests it, nor a weight and effect destructive of the verdict. There was additional evidence, a particular statement of which is not required, tending to show a deliberate and premeditated design on the part of the appellant to effect the death of the deceased. The trial was conducted with commendable decorum and fairness on the part of the trial justice and the counsel. The charge of the trial justice was impartial, clear and comprehensive. Upon the entire evidence the verdict was justified and the judgment should not be reversed unless the appellant did not have a fair and just trial, as he claims, because of an error on the part of the court in admitting testimony, or misconduct on the part of the jury in reaching the verdict.

The error in admitting testimony was this: Two witnesses in behalf of the People were permitted to testify that the deceased when he reached the doorway of his home, after he was shot, in answer to the question " What is the matter? " stated, " Charley Sprague has shot me." The appellant's counsel made proper objection to the questions which called forth the statement, and exception to the ruling admitting them. It is the law that the admission in evidence of the declaration of an injured person concerning the cause or manner of the injury is an exception to the general rule that hearsay evidence is inadmissible, and should occur only when the declaration is so spontaneous or natural that the truthfulness of the declarant in making it is apparent. As Judge Gray wrote: " the distinction to be made (between an admissible and inadmissible declaration) is in the character of the declaration; whether it be so spontaneous, or natural, an utterance as to exclude the idea of fabrication; or whether it be in the nature of a narra-

tive of what had occurred.   In the present case, the declaration
of the deceased was not spontaneous; it was called forth by the
inquiry as to ' what had happened ' and was, distinctly, narra-
tive."   (Greener v. General Electric Co., 209 N. Y. 135, 138.)
In the case we are now considering the declaration was not so
spontaneous or natural as to exclude the idea that it was the
outgrowth of the threat made to the deceased by the appellant
that he would get a gun and shoot him, or the idea that the de-
ceased fabricated it.   The space of time between the shooting
and the declaration was considerable.   The distance traveled
by the deceased in going to the doorway, where the declaration
was made, from where he was when shot, was substantial.   The
declaration was called forth by the inquiry:   " What is the
matter," and was distinctly narrative.   The declaration made
under such conditions was wholly untrustworthy and should
not have been received.

Our consideration, however, is not terminated in a reversal
of the judgment because error was committed by the trial court.
The direction of the legislature to us in criminal cases is to
" give judgment, without regard to technical errors or defects
or to exceptions which do not affect the substantial rights of
the parties."   (Code of Criminal Procedure, § 542.)   This court
is loyal to such direction and frequently applies it.   We do not
reverse a judgment for errors at the trial which did not
prejudicially affect the rights of the defendant.   (People v.
Sarzano, 212 N. Y. 231; People v. Ferola, 215 N. Y. 285.)
The direction is applicable here.   The dying declaration of the
deceased, which was rightly received in evidence (People v.
Sarzano, 212 N. Y. 231; People v. Kane, 213 N. Y. 260), con-
tained the statement that the appellant shot him.   The declara-
tion of the deceased in the doorway that the appellant shot him
added nothing to the facts presented.   The dying declaration
stated, under conditions more impressive, the same act on the
part of the appellant.   The effect held by the minds of the jurors

at the close of the evidence would have been the same had the declaration in the doorway not been made. It follows that its erroneous admission in evidence must be disregarded by us.

The appellant made the motion for a new trial upon various grounds set forth in the affidavits supporting the motion. The trial justice denied the motion. It was addressed to the sound discretion of the court and our review of it, in so far as it is based on alleged irregularities in the conduct of the jurors, is limited to ascertaining whether or not the discretion was abused to the prejudice of the appellant, and correcting the abuse if it exists. (People v. Johnson, 110 N. Y. 134; People v. Buchanan, 145 N. Y. 1; People v. Koepping, 178 N. Y. 247; Wheeler v. Sweet, 137 N. Y. 435; People v. Gallagher, 75 App. Div. 39; affd., 174 N. Y. 505.)

The counsel for the appellant in his brief and argument presents especially for our consideration certain features of the motion. The attorney of record for the appellant testified by his affidavit that one of the jurors stated to him in September, 1914, that an unnamed juror said during the deliberations of the jury that he was an expert with the rifle and in rifle practice, and the experience of the juror therein as given by him differed materially from the proof upon the trial and influenced the juror who was giving the information greatly in arriving at the verdict. He also testified that another juror stated to him subsequent to the rendition of the verdict that during the trial he owned a rifle similar to that had by the appellant at the time of the shooting and experimented with it for the purpose of determining for himself the truth or falsity of the evidence introduced by the appellant relating to the subject, and communicated his experiments to the other jurors. It is a right secured by the Constitution and statutes of the state and essential to justice, that an accused person shall be judged by a jury upon the evidence received by the trial court

in open court and in the presence of the accused. Parties and witnesses are to be heard in open court in the presence and under the direction of the presiding judge. The law is extremely tenacious of this cardinal doctrine. The oath of a juror is, that he will decide according to the law and the evidence given to him—given to him according to the rules of evidence and with the parties face to face. Grievous or fatal injustice and wrong may be done an accused person by a verdict based to any extent upon facts or reasons of which he is ignorant and without the opportunity of refuting or explaining. A slight change in any of the many conditions which surround a transaction may change its result in a manner or to an extent not comprehended, and induce the belief that there is innocence where there is, in fact, guilt, or guilt where there is, in fact, innocence. There is not here, however, any competent proof that any juror was guilty of the serious misconduct charged by the defendant. This is true for two reasons. The statements offered by the affidavits as proof are mere hearsay. Whether or not a juror had been thus guilty was a fact to be determined by the trial justice from legal proof. Statements made not under oath are not such proof and do not become such by legal proof that they were made. It would destroy the stability of jury trials if the affidavit of a third party, testifying to the statements made by a member of the jury in his presence after the trial, could overturn or impeach the verdict. Moreover, it seems to be the settled law of this state that jurors cannot by their affidavits, even if those affidavits aver their misconduct outside of the jury room, attack or discredit the verdict which they have in fact recorded or rendered. Much less can they do so by their unsworn statements presented through the affidavits of other. (Clum v. Smith, 5 Hill, 560; Dalrymple v. Williams, 63 N. Y. 361; Williams v. Montgomery, 60 N. Y. 648; Mitchell v. Carter, 14 Hun, 448; Dean v. Mayor, etc., of N. Y., 29 App. Div. 350.) The guilt of

the appellant as charged and convicted was firmly established by the evidence. The trial justice justly denied the motion for the new trial. Neither through the facts presented to us, nor by any ruling of the court are we justified in interfering with the verdict of the jury as rendered.

The judgment of conviction should be affirmed.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Judgment of conviction affirmed.