# SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

## June 29, 1923.

## THE PEOPLE v. PIETRO BARBIERI.

(206 App. Div. 34.)

(1) MURDER, SECOND DEGREE—DEFENSE THAT KILLING WAS JUSTIFIABLE —VERDICT NOT AGAINST EVIDENCE.

On a prosecution for murder in the first degree the defendant interposed the defense that the killing was justifiable. The conviction of the defendant of murder in the second degree was amply supported by the evidence where it appeared that the decedent, with others, visited the home of defendant's father; that as the party was leaving the house the defendant's father and one of the decedent's companions had a scuffle near the foot of the steps leading from the side porch of the house to the walk; that after they were separated the decedent and his companions left the premises, but the decedent returned for the purpose of finding a hat belonging to one of his companions; that as he reached the steps the defendant opened a door leading into the stormhouse and shot the decedent twice; that after, the decedent and his companions left the house the first time, the defendant went to his bedroom and procured a revolver and then returned and went into the stormhouse before he fired the first shot.

(2) SAME—FAILURE OF DISTRICT ATTORNEY TO FURNISH DEFENDANT WITH NAME OF ONE WITNESS WHO APPEARED BEFORE GRAND JURY AND WHOSE NAME WAS NOT ON INDICTMENT, NOT PREJUDICIAL ERROR.

The fact that the name of the defendant's mother, who had been a witness before the grand jury, was not given the defendant and was not on the indictment is not such an error as will justify a reversal in this case.

(3) SAME—MINOR ERRORS DISREGARDED UNDER CODE CRIM. PROC., § 542, AND JUDGMENT AFFIRMED.

While there were several minor errors committed on the trial, none of them affect the substantial rights of the defendant and they will be disregarded under section 542 of the Code of Criminal Procedure and the judgment be affirmed.

APPEAL by the defendant, Pietro Barbieri, from a judgment of the County Court of the county of Onondaga, rendered against him on the 16th day of June, 1921, convicting him of the crime of murder in the second degree.

*R. L. Shanahan,* for the appellant.

*Frank P. Malpass, District Attorney,* for the respondent.

CLARK, J.:

Defendant was convicted June 16, 1921, in the Onondaga County Court of the crime of murder in the second degree after a trial on an indictment that charged him with the crime of murder in the first degree.

At the time of the homicide defendant resided with his parents in the city of Syracuse. They kept boarders, and the father made and sold wine in considerable quantities.

On the evening of the homicide, October 23, 1920, Vincenzo Corapi, Antonio Procopio and Antonio Carsonito, all Italians, and residing in Syracuse, met at the home of Antonio Procopio and visited until about 7:30 o'clock, when they went together to the home of defendant's father at 513 East Adams street.

They were evidently familiar with the place, for they entered the house without knocking, and there found defendant's par-

ents and two other men.   They remained in the dining room
for a time visiting, and then accepted the invitation of defend-
ant's father, Sam Barbieri, to drink some. wine, for which
they paid him.

These men were all sober at the time, but before they left the
place about midnight two of the number, Procopio and Corapi
(deceased), became intoxicated.

While they were at defendant's house other men came and
were served with drinks.   During the evening defendant's
father and Procopio became involved in a heated argument,
and while it was in progress defendant came to the house,
whereupon his father directed the three men who had come
together earlier in the evening to go home, and they presently
left the house.   The last of the three to leave was Procopio,
the other two having preceded him a short distance and having
gone from the side veranda of the house down on to the side-
walk leading to the street.

Defendant's father followed this man out of the house, and
he and Procopio had a scuffle near the foot of the steps leading
from the side porch to the cement walk.   In this scuffle Pro-
copio was thrown to the ground.   Defendant and another
Italian then came out of the house and separated defendant's
father and Procopio, and defendant and his father immedi-
ately returned to the house and closed the door, and deceased
and Procopio went out into the street.

Procopio had blood on the right side of his head and his hat
had been lost in the scuffle.   He asked for his hat and Corapi
went back into the yard to get it.   As he reached the steps by
which all these parties had left, and as he was facing the side
porch, defendant opened the door leading into the stormhouse
and shot at Corapi twice, and he subsequently died on the
grass a short distance from the foot of the steps.

On the trial it was the contention of the People that when
the shooting occurred deceased was fourteen or fifteen feet
away from defendant, who stood in the storm vestibule, while

deceased was at the foot of the steps leading from the side porch.

It was the contention of defendant that he shot in self-defense as deceased was trying to pull him from the steps, and that he believed he was in imminent peril of personal injury about to be inflicted by Corapi.

One of the three men who had gone to defendant's home that night was Antonio Carsonito, and at the time of the shooting he was standing outside the fence in East Adams street. He was the only eyewitness of the tragedy who gave evidence on the trial, excepting defendant, the other survivor of the three who had visited defendant's home that night not being present at the trial.

The revolver with which defendant did the shooting had been procured by him from a suitcase in a bedroom after he had returned to the house with his father following the termination of the scuffle with Procopio.

Right after the shooting defendant ran to a nearby saloon and attempted to telephone the police station, but failing in that he went out on the street and met a policeman, and told him that a man had been shot at 513 East Adams street, and that the man who had shot him was still there in the yard. He accompanied the officer to the scene of the shooting and other officers came almost immediately.

The dead man, Corapi, was lying where he had fallen, but the man that defendant stated did the shooting was absent. Some of the officers, accompanied by defendant, went in pursuit of the supposed murderer, and shortly overtook Procopio and brought him back to the scene of the shooting, whereupon defendant again stated to the officers that Procopio was the man who did the shooting.

Subsequently when he had been taken to police headquarters he again stated that Procopio was the man who had shot Corapi, and he did not make a different statement on the subject until about five hours after the shooting. Then he was

confronted with Carsonito, who had witnessed the shooting, and on being accused by the latter of being the party who had shot Corapi defendant said, "Well, you have got me I guess," and he thereupon admitted that he had done the shooting.

On all material points the jury accepted the testimony of Carsonito as to the details of the shooting. That is not surprising in view of the fact that defendant on at least three occasions had falsely accused an entirely innocent man of this shooting before he finally admitted that he had done it himself.

The statement of the People's witness Carsonito, that defendant stood in the stormhouse on the north end of the side porch at the time of the shooting, was substantially corroborated by the fact that two exploded cartridge shells were found, one inside the stormhouse and the other just outside of it, and there was evidence to the effect that a revolver similar to the one used by defendant ejected an exploded shell immediately after firing.

The defense here was that the shooting was justifiable. A homicide committed by a civilian is justifiable under the following circumstances:

" 1. In the lawful defense of the slayer, or of his or her husband, wife, parent, child, brother, sister, master or servant, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer, or to any such person, and there is imminent danger of such designed being accomplished; or,

" 2. In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling or other place of abode in which he is." (Penal Law, § 1055.)

The finding of the jury that this shooting was not justifiable was warranted by the evidence. It would not have justified a finding that defendant acted either in defense of his parents, or that he had reasonable ground to apprehend a design on the

PEOPLE V. BARBIERI. 489

part of Corapi to commit a felony, or to do any personal injury either to the defendant himself or to his parents, and that there was imminent danger of such design being accomplished. Both his parents were safe in the house and behind closed doors when the shooting occurred.

Deceased and his companions had been in defendant's house several hours before the shooting and during all that time Corapi evinced no purpose to injure either defendant or his parents. The first trouble there that night was after the men had left the house, when Sam Barbieri followed them out and got in a squabble with Procopio, but after its conclusion defendant's father retired to the house and Procopio made no attempt to follow him. Under these circumstances, and when defendant had not been attacked or threatened in any way, the finding that he had no reasonable ground to apprehend a design on the part of Corapi to do some great personal injury either to him or his parents, was strictly in accordance with the evidence. (People v. Regan, 107 App. Div. 608; People v. Constantino, 153 N. Y. 24; People v. Rodawald, 177 id. 408.)

Defendant was properly convicted of murder in the second degree. Indeed, under the evidence the jury would have been warranted in convicting him of murder in the first degree. The intent to kill was perfectly apparent, for defendant went to a bedroom and procured a weapon and returned through another room and opened the outer door and went into the stormhouse before he fired the first shot. The fact that he traveled such a distance to get the gun, and retraced his steps, and then went out into the stormhouse before shooting, justified the finding of an intent to kill, and the jury might well have found that such purpose was formed with a deliberate and premeditated design to kill.

The acts of a person charged with crime furnish strong evidence of that person's intentions, and measured by that standard the evidence of defendant's intent to kill was ample, for a

person is presumed to intend the "natural and necessary consequence of his act." (People v. Chiaro, 200 N. Y. 316.)

Counsel for appellant has urged with much force that the learned trial court made numerous errors in the admission and rejection of evidence. I do not regard any of the rulings complained of as presenting reversible error.

The fact that defendant's mother had been a witness before the grand jury, and that her name was not furnished to defendant, and was not on the indictment, is not fatal. If defendant had wanted the names of witnesses who gave testimony before the grand jury, he could have procured them in the manner provided by law. (Code Crim. Proc., § 271; People v. Glen, 173 N. Y. 396.)

This was a protracted trial and the contest throughout was most spirited, and it is not surprising that the record discloses some minor errors. None of them is vital, however, and it is the duty of this court to give judgment without regard to technical errors not affecting the substantial rights of defendant. (Code Crim. Proc., § 542; People v. Sprague, 217 N. Y. 373; People v. Ferola, 215 id. 285.)

Defendant had a fair trial, and the verdict convicting him of murder in the second degree is supported by ample evidence.

The judgment should be affirmed.

All concur.

Judgment of conviction affirmed.