PHILIP M. MCHUGH, Appellant, *v.* J. EDWARD JONES, Also Known as JAMES EDWARD JONES, Respondent.

Second Department, November 27, 1939.

*Horace M. Gray [Charles E. Wythe* with him on the brief], for the appellant.

*Hyman I. Fischbach,* for the respondent.

JOHNSTON, J. The action is to recover damages for fraud, after rescission of an express contract entered into by plaintiff's assignor and defendant. The jury, by a vote of eleven to one, rendered a verdict in defendant's favor. Plaintiff's motion to set aside the verdict on the grounds specified in section 549 of the Civil Practice Act, except excessiveness, was denied. Subsequently plaintiff moved to set aside the verdict and for a new trial and to vacate the judgment because of the alleged bias and incompetency on the part of one or more jurors. The motion was denied, and plaintiff appeals.

It is not disputed that upon their *voir dire* examination all the jurors were told the nature of the action and asked if they knew the parties or their attorneys, if there was any reason why they would be unable to consider the evidence without bias and render an impartial verdict, and whether they knew any facts or circumstances, about which they had not been interrogated, which might affect their fair consideration of the evidence. No juror replied in the affirmative. The sole basis of the motion is that two of the jurors — Mrs. Wakefield and Mr. Lloyd — knew the defendant and that the former was acquainted with defendant's wife, and, having concealed this fact upon their *voir dire* examination, they were not qualified to act as jurors.

The only evidence of the alleged disqualification is furnished by the affidavits of three jurors. The affidavits disclose no ground for criticism of Mr. Lloyd. They merely state that he resided near defendant's home and " seemed to know " of him. Stripped of the impressions of the affiants and eliminating statements of what transpired in the jury room during the deliberations of the jury, the affidavits show that during the trial and at recess Mrs. Wakefield told the affiants, in the presence of other jurors, that the defendant was a persecuted man; that he had a sweet wife; that his wife was very proud of him; and that she also told one of the affiants that she was an officer of a woman's club in Scarsdale, of which defendant's wife was then or had been a member. In his opposing affidavit the defendant states he attended at the trial, was pointed out to the jurors and did not know any of them.

Accepting the above statements in the moving affidavits as true, they clearly indicate that Mrs. Wakefield was acquainted with the defendant's wife, through whom she learned much about the defendant, that she believed he was " a much persecuted man," and that she willfully concealed these facts upon her *voir dire* examination. She had been asked if there were any other facts or circumstances about which she had not been interrogated that might affect her fair consideration of the evidence. She " knew the purpose of the inquiry and the information which was desired, and it was his [her] duty to make the disclosure which would probably have led to his [her] being excused from the jury." (*McGarry* v. *City of Buffalo*, 53 N. Y. St. Repr. 882; 70 Hun, 597.) Her silence deprived plaintiff of the right to excuse or challenge her because her knowledge of defendant and her acquaintance with his wife were such as to justify, if not require, that she be rejected. Her failure to speak up was misconduct (*Knice* v. *Hedges*, 119 Misc. 1; affd., 205 App. Div. 871) and constituted a fraud upon the court as well as upon the plaintiff, and the verdict .

should be set aside. (*Payne* v. *Burke*, 236 App. Div. 527; *Slater* v. *United Traction Co.*, 172 id. 404.)

As was said by the late Mr. Justice CARDOZO in *Clark* v. *United States* (289 U. S. 1, 11): " A talesman when accepted as a juror becomes a part or member of the court. *In re Savin*, 131 U. S. 267; *United States* v. *Dachis*, 36 F. [2d] 601. The judge who examines on the *voir dire* is engaged in the process of organizing the court. If the answers to the questions are wilfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham. What was sought to be attained was the choice of an impartial arbiter. What happened was the intrusion of a partisan defender. If a kinsman of one of the litigants had gone into the jury room disguised as the complaisant juror, the effect would have been no different. The doom of mere sterility was on the trial from the beginning."

The remaining question is: Are the affidavits of the jurors competent to show Mrs. Wakefield's disqualification? The learned court below denied the motion as a matter of law and not in the exercise of discretion, holding that affidavits of jurors may not be used to impeach their verdict. That rule, while well established and grounded on sound public policy, is not inflexible. There are exceptions to it (*McDonald* v. *Pless*, 238 U. S. 264, 268), which need not now be considered. The rule excludes affidavits of jurors " to show mistake or error of the jurors in respect to the merits, or irregularity or misconduct, or that they mistook the effect of their verdict and intended something different." (*Dalrymple* v. *Williams*, 63 N. Y. 361, 363.) It is also well settled that jurors cannot by their affidavits, even if those affidavits aver their misconduct outside the jury room, discredit a verdict which they have rendered. (*People* v. *Sprague*, 217 N. Y. 373, 380, 381.) But the moving affidavits were not submitted to show misconduct of Mrs. Wakefield as a juror either in or outside the jury room. They were offered to prove that before she was accepted as a juror she concealed a fact, which it was her duty to disclose and which, if she had made known, doubtless would have resulted in her being excused. Nor are the affiants impeaching or avoiding their verdict " in respect to a matter which essentially inheres in the verdict itself " (*Harris* v. *State*, 24 Neb. 803; 40 N. W. 317), or revealing what was said or done in the jury room preliminary to the verdict. We may assume those proceedings are " inviolable for all time." (*People ex rel. Nunns* v. *County Court*, 188 App. Div. 424, 430.) The affiants merely aver what occurred when all the talesmen were being examined and what Mrs. Wakefield said afterwards, not in the jury room but during the progress of the trial, and which, if

true, show she made false answers or was guilty of concealment on her *voir dire* examination, which disqualified her to act as a juror. Therefore, the court should have summoned the juror and inquired as to the truth or falsity of the charges against her and, if her disqualification was shown, granted the motion.

We believe our conclusion finds support in *People* v. *Leonti* (262 N. Y. 256). There the defendant, a Sicilian, was convicted of murder in the first degree. On appeal from the judgment the court also considered an order denying a motion for a new trial on the ground of the disqualification of a juror. It appears that when the talesmen were examined, the juror whose status was afterwards questioned replied that " he had no prejudice against Italians of foreign birth, that he could be impartial and could accord to defendant the same deal that he could accord anybody." It is true no affidavit of a juror was submitted in support of the motion. The affidavits of defendant's counsel and another attorney disclosed that after the verdict was rendered they met the juror on the street and he said: " I wouldn't believe a Sicilian under oath, and none of the jurors would. * * * Until the defendant took the stand I had some doubts, but when he took the stand and I found out that he was a Sicilian, I no longer had any doubts." The court said: " This is not a case of refusal to receive evidence of misconduct of a juror for the purpose of impeaching a verdict. (*People* v. *Sprague*, 217 N. Y. 373.) As the affidavits stand undenied, they constitute convincing proof that this talesman never was eligible to become a member of the jury, that from the beginning he was disqualified on the ground of prejudice and that his vote for conviction was, therefore, a nullity. (Cf. *Clark* v. *United States*, 289 U. S. 1.) The trial judge, therefore, was not deprived by the rule in the *Sprague* case of the power to summon the juror before him and to take testimony relating to the grave charge embodied in the moving affidavits. Even now we have power to remit the case for that purpose (*People* v. *Arata*, 254 N. Y. 565), but upon an examination of the entire record we are convinced that in the interest of justice we should order a new trial."

We recognize that our views as to the competency of the affidavits of jurors are in conflict with the decision of the Fourth Department in *Payne* v. *Burke* (*supra*), but for the reasons given we respectfully decline to follow it.

The appeal from the judgment was not presented to the court and, therefore, no disposition is made thereof.

The order should be reversed on the law, with ten dollars costs and disbursements, and the matter remitted to the trial court

for disposition of the motion after summoning the juror and ascertaining whether she was eligible to act as such.

LAZANSKY, P. J., and HAGARTY, J., concur; TAYLOR, J., concurs in the action of the majority with respect to the judgment herein, but as to the order appealed from dissents and votes to affirm, with opinion; CLOSE, J., concurs with TAYLOR, J.

TAYLOR, J. (dissenting in part). If we accept as true the statements in the moving affidavits made by other jurors, Mrs. Wakefield was not an unbiased juror and, therefore, the plaintiff did not have a fair and impartial trial, to which he was entitled, before an unbiased and unprejudiced jury. Upon plain principles, however, these affidavits may not be considered. The learned court below was right in disregarding them and in denying plaintiff's motion based solely thereon. Their effect in the last analysis was to impeach the verdict rendered in favor of the defendant, upon the ground that Mrs. Wakefield was disqualified actually to join in its rendition. Manifestly the stability of jury verdicts will be impaired, or even destroyed, if the practice of receiving jurors' affidavits, after their verdict has been rendered, to establish the initial and continuing disqualification of a juror, joining in that verdict, to serve as such juror, is approved. The reasons for non-approval of such practice are clearly set forth in the similar case of *Payne* v. *Burke* (236 App. Div. 527, 530). In the opinion in that case EDGCOMB, J., said (at p. 530): " I see no reason for making any exception to the general rule in this case. The ultimate purpose to which these two affidavits have been put is to discredit the very verdict to which these jurors gave their assent. The reason for the rule prohibiting the use of such evidence is as applicable here as in any other case."

In my opinion, the reasons for not receiving jurors' affidavits which are given in the case cited are potent to work affirmance here. The cases upon which the majority relies, read in the light of their peculiar facts, do not constitute authority for departure from the general rule reiterated in the *Payne* case (*supra*).

I concur in the action of the majority with respect to the judgment herein, but as to the order appealed from I dissent and vote to affirm.

CLOSE, J., concurs with TAYLOR, J.

Order reversed on the law, with ten dollars costs and disbursements, and the matter remitted to the trial court for disposition of the motion after summoning the juror and ascertaining whether she was eligible to act as such.