Raymond E. Aldrich, Jr., J.
The defendant Frankie Johnson was indicted for the crimes of criminally selling a dangerous drug in the third degree, a class C felony, criminal possession of a dangerous drug in the fourth degree, a class D felony, and criminal possession of a dangerous drug in the sixth .degree, a class A misdemeanor, and he was found guilty of all three crimes by a jury verdict on November 16,1973. He now moves to vacate his judgment of conviction upon the grounds that the same was obtained in violation of a right of his under the Constitution of *881 this State or of the United States pursuant to CPL 440.10 (subd. 1, par. [h]).
The principal contention of the defendant is that he was denied a fair trial because the court stenographer when requested by the jury to read the testimony of the defendant omitted while doing so certain words which would have played a crucial role in the jury’s determination that the, defendant committed the crimes.
The crimes alleged occurred on April 25, 1973, and the defendant was arrested in a barroom approximately four months later upon his being identified by a police officer who was one of the principal eyewitnesses to the purported narcotic sale and who also testified at the trial. The defendant testified that at the time of his arrest he made an inquiry of the officer as to why he was being arrested, and the official transcript, verified by Rudolf G. Sauter, the County Court stenographer, at page 227, establishes that the defendant testified as follows: “ Q. What happened? A. The bartender called the cops and Sauter comes in, and he’s with Dunagan, Sauter and Kwant, and four city police comes in, and so they goes over to the bar and asks the bartender where is the fight and he said the two people had left already, so Sauter sees me over at the bar, and first he looked around and he seen me, and he came over and put his hand on my shoulder and he said you are under arrest, and I said under arrest for what, and he say this happen in April, and I say how come you didn’t pick me up in April, and he said come on in the car.” (Emphasis added.)
The defendant claims, however, that when his testimony was read to the jury by the stenographer on November 16, 1973 at approximately 10:00 o’clock in the evening, the stenographer omitted to read those words stating ‘ * and he say this happen in April ’’which omission was crucially determinative of the import to be given the defendant’s inquiry as "to why he was being arrested, and thus created the belief in the minds of the jurors that he had admitted he had committed the crimes in April without his even being told by the police officer that the crimes were in fact committed in that month, thereby convicting himself by his own admission.
To support the defendant’s contention that the stenographer erred in reading the testimony, he submits the affidavits of seven jurors to establish both the misreading and the significance this had upon their minds. Jurors Dominic A. Gallo, Richard C. Relyea, Andrew H. Whitson, and Wellington I. T. Sun swear in their affidavits that'the testimony as it appears on page 227, line *882 15, heretofore recited, was not the same as that read to them that night since the stenographer left out the words ‘1 and he say this happen in April ”. Jurors Richard C. Relyea, Philip M. Kane, Andrew H. Whitson, William Alvarado, Stephanie Weigel and Wellington I. T. Sun swear in their affidavits that the defendant’s reference to the month of April before any mention thereof was made by the police officer was thoroughly discussed among them, and juror Dominic A. Gallo swears that he changed his vote from “ not guilty ” to “ guilty ” because he felt the defendant convicted himself by suggesting that he should have been arrested in April. The impact of the purported misreading is further emphasized by the affidavits of jurors Richard 0. Relyea and Philip M. Kane who while they stated the omission had no effect on their vote they were convinced that Mr. Gallo changed his vote based upon the testimony as read to them, and in fact juror Andrew H. Whitson swore that the reading by the stenographer convinced him that the defendant had convicted himself by admitting something happened in April, that he thus felt secure in his judgment and he cut off any further deliberations on his part while the other jurors continued to bring the point up to Mr. Gallo who had up until that time been voting “ not guilty ”. While jurors William Alvarado and Stephanie Weigel swore that while the reading would not have changed their vote it did help and confirm their feeling that the defendant was guilty.
In further support- of the motion, the defendant claims that the error in reading was brought to the attention of this court immediately after the jury again retired to the jury room that night, and that the court caused the stenographer in the presence of the Assistant District Attorney, the defendant, the defense attorney and others on his staff to reread in chambers the testimony in question since defense counsel felt that an error in reading had been made, and further that upon the rereading in chambers the testimony was read by the stenographer exactly as it had been previously read to the jury in the courtroom.
Tke People oppose the motion stressing that the proceeding is in the nature of coram nobis, and that there is no indication on the record of the purported error, and therefore the defendant has waived any error which might have been made by the stenographer by not preserving it upon the record for appeal. Additionally, the contentions are made that a jury cannot impeach its own verdict, and that there is no adequate proof as to exactly what was read by the stenographer to the jury that night. ,
*883 The court will now consider the papers submitted upon the motion for the purpose of ascertaining whether the motion is determinable without a hearing to resolve questions of fact (CPL 440.30, subd. 1).
The papers do not establish that there are circumstances, which mandate denial of the motion pursuant to CPL 440.10 (subd. 2) (CPL 440.30, subd. 2) because the alleged error in misreading does not appear on the official transcript of the stenographer so as to permit review upon an appeal from the judgment.
Since the mandatory denial of the motion (CPL 440.10, subd. 2; 440.30, subd. 2) is not authorized, the court will now consider the discretionary grounds for denying the motion (CPL 440.10, subd. 3), and note firstly that the provisions of CPL 440.10 (subd. 3, pars, [b], [c]) are inapplicable since no prior motion was made.
The People contend the motion should be denied for the defense’s failure to make timely objection to the alleged error of misreading citing CPL 440.10 (subd. 3, par. [a]) claiming that the defense could thus have made the ground or issue raised by this motion appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, and this contention, if established, would permit the court to deny the motion. However, such denial is not required since the defendant claims that he did timely object when he did so in chambers, and therefore he did not unjustifiably fail to adduce such matter prior to sentence.
These conflicting contentions create an unresolved issue from which it appears there may be circumstances authorizing, though riot requiring, denial of the motion, and further since the court does not have to deny the motion in its discretion even if the defendant had unjustifiably failed to adduce such matter prior to sentence (CPL 440.10, subd. 3, par. [a]), the court in the interest of justice and for good cause shown under the circumstances will exercise its discretion and proceed to consider the merits of the motion.
Upon considering the merits of the motion the court finds the moving papers allege grounds constituting legal basis for the motion and such grounds are supported by sworn factual allegations thereof, however, the sworn allegations of fact are neither conceded by the People to be true nor are conclusively substantiated by unquestionable documentary proof so as to mandate that the court grant the motion without conducting a hearing (CPL 440.30, subd. 3).
*884 By the same manner the court is not permitted to deny the motion without conducting a hearing since grounds constituting legal basis for the motion have been raised, the moving papers contain sworn allegations substantiating or tending to substantiate all the essential facts which form the basis for the motion (CPL 440.30, subd. 4, pars, [a], [b]), which allegations of fact are not conclusively refuted by unquestionable documentary proof nor contradicted by a court record or other official document, but are supported by affidavits of persons other than the defendant and under these circumstances there is reasonable possibility that such allegations are true (CPL 440.30, subd. 4, pars, [c], [d]).
The defendant claims in his papers that the misreading of his testimony influenced the verdict. A unanimous vote of guilty is required before a defendant can be convicted by jury verdict, and if one or more of the jurors voted ‘ ‘ guilty ’ ’ because of the way in which the defendant’s testimony was read, then that reading was crucial and not merely harmless error. While the People do not deny that the testimony was misread, neither do they concede that it was, and thus a hearing should be had to determine whether the defendant’s testimony was misread, and if it was whether the misreading was material, and affected the vote of the jury so as to deny defendant a fair trial, for if it was the judgment of conviction will be set aside (CPL 440.10, subd. 1, par. [h]). (People v. Giammatto, 273 App. Div. 1023; People v. Tyler, 14 A D 2d 609.)
As a general rule, a juror should not be permitted to impeach his own verdict (People v. Sprague, 217 N. Y. 373; McDonald v. Pless, 238 U. S. 264), and the policy reason for the rule is that the courts “ do not wish to encourage the posttrial harassing of jurors for statements which might render their verdicts questionable. * * # On the other hand, a defendant has a right to a trial by a fair and impartial jury ” and these “ public policy .considerations must at all times be weighed against the defendant’s fundamental rights.” (People v. De Lucia, 20 N Y 2d 275, 278.) Therefore the rule against juror’s impeachment of their verdicts should not operate in every case. This public policy relates to jury room deliberations and not to outside influences where the violation of a defendant’s Sixth Amendment rights outweighs the policy reasons for the rule. As the Court of Appeals stated in People v. De Lucia (supra, p. 279):
‘1 Statements concerning outside influences on a jury, however, occurring less frequently and more susceptible to adequate proof, should be admissible to show that the defendant was *885 prejudiced, for here the danger to our jury system is minimal compared with the more easily proven prejudice to the defendant, ’ ’
The affidavits of the jurors in this case are not directed at any juror’s misconduct within the jury room, or any impropriety on the part of any juror, but rather they focus on an alleged error in the reading of the defendant’s testimony which occurred outside of the jury room and was caused by an inadvertent reading by the stenographer. The misreading by the stenographer, if it occurred, would certainly be an outside influence contemplated by De Lucia, and under such circumstances, the policy considerations generally applying to the rule that jurors may not impeach their own verdict are outweighed by the possible violation of the defendant’s constitutional rights to be afforded a fair trial.
For the foregoing reasons a hearing is ordered to determine: (1) whether the defendant’s testimony was misread, and if it was, the manner and extent thereof; and (2) if it was whether the misreading was material, and affected the vote of the jury so as to deny defendant a fair trial; in order that the hearing court, upon determining the motion, can set forth on the record its findings of fact, conclusions of law and the reasons for its determination (GPL 440.30, subds. 5, 7).
Since this Judge presided at the trial when the misreading was purported to have occurred, and since he anticipates his being Called as a witness in the resolution of the issue as to whether the defendant’s testimony was actually misread, and the manner and extent thereof, the holding of the hearing by another Judge is required.
Accordingly, the hearing ordered herein should be held before the Honorable Joseph Jiudice, Dutchess County Court Judge, and the proceeding is respectfully transferred to him and placed upon his calendar for November 4, 1974, at 10:00 o’clock in the forenoon thereof.