■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SANTOS MORALES, Appellant.—Judgment, Supreme Court, Bronx County (Ivan Warner, J.), rendered December 28, 1984, convicting defendant, after a jury trial, of the crimes of burglary in the second degree (Penal Law § 140.25 [2]) and robbery in the second degree (Penal Law § 160.10 [1], [2] [two counts]), adjudicating him a youthful offender, and sentencing him to two concurrent indeterminate terms of imprisonment of from 1⅓ to 4 years*, is affirmed, without prejudice to defendant, if so advised, making a CPL article 440 motion.

---

* This sentence also covered a bail jumping charge, which was then pending against defendant under a separate indictment.

At approximately 10:45 P.M. on September 7, 1983, the defendant, together with three other persons, broke into the apartment of 65-year-old Walter Brown (Mr. Brown), which was located at 1979 Daley Avenue in The Bronx. Once the defendant and his accomplices were in Mr. Brown's apartment, they struck him in the ribs and robbed him of $237. Mr. Brown recognized the defendant as a tenant who lived in the building where this crime took place.

Promptly after these robbers left his apartment, Mr. Brown reported this crime to the police, who quickly arrested defendant.

Soon after the date of defendant's conviction, but prior to the date of sentence, defendant's counsel moved to set aside the verdict, based upon an allegation that juror number six had lied when she stated during voir dire that she had never been the victim of a crime. Moreover, the defense counsel contended that as a result of this lie the juror was selected as a member of the jury, and that, as a member of the jury, she allegedly used her experience as a crime victim to convince the other jurors to convict the defendant. In support of these allegations, defense counsel submitted an affidavit from juror number nine. The trial court denied the motion without a hearing. Defendant argues that the trial court erred.

It is the law in this State that "[g]enerally, a jury verdict may not be impeached by proof of the tenor of its deliberations" *(People v Brown,* 48 NY2d 388, 393 [1979]). More than 20 years ago the Court of Appeals in *People v De Lucia* (15 NY2d 294, 296 [1965], *cert denied* 382 US 821 [1965], *on rearg* 20 NY2d 275 [1967]) stated: "It has long been familiar law that jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct within or without the juryroom *[sic]*; much less can they do so by statements presented in the form of hearsay affidavits *(People* v. *Sprague,* 217 N. Y. 373; *Dalrymple* v. *Williams,* 63 N. Y. 361; Fisch, New York Evidence, § 305; Richardson, Evidence [8th ed.], § 423). The rule is founded on sound public policy *(Payne* v. *Burke,* 236 App. Div. 527)".

The rare exception to this general rule occurs when the jury's deliberation is affected by an outside or improper influence *(e.g., Parker v Gladden,* 385 US 363 [1966], where the jurors could impeach the verdict on the basis of an improper communication from a bailiff, who was the outside influence; *People v Brown, supra,* where a juror performed an experiment on her own and reported the results to the jury, and this

contrived experiment was deemed an improper influence; *People v Crimmins,* 26 NY2d 319 [1970], where the jurors made an unauthorized visit to the crime scene, and this visit was deemed an improper influence).

Our research fails to uncover a single appellate decision in this State that holds that an inquiry can be made into how jurors talk to each other in the jury room. Recently, the Court of Appeals, in the case of *People v Pickett* (61 NY2d 773, 774 [1984]), held that: "communications among the jurors that were a part of their deliberative process in attempting to reach a verdict on the issues they were charged to decide (including their efforts by permissible arguments on the merits to persuade each other) were secret and not to be disclosed".

Further, nothing before us would indicate that juror number six did anything that would frustrate defendant's right to a fair and impartial consideration of the facts before the jury *(see, People v Horney,* 112 AD2d 841 [1st Dept 1985], *lv denied* 66 NY2d 615 [1985]; *People v Phillips,* 87 Misc 2d 613 [Sup Ct NY County 1975], *affd* 52 AD2d 758 [1st Dept 1976], *lv denied* 39 NY2d 949 [1976]).

Applying the legal authority cited *supra* to the instant allegation of juror misconduct, we find that there is an insufficient showing of either an outside or improper influence to justify a hearing, and we agree with the trial court's summary denial of the instant motion.

The dissent offers no relevant legal authority that stands for the proposition that a posttrial hearing should be held to inquire into whether a juror gave truthful answers on the voir dire, when the only evidence to justify such a hearing is the unsupported affidavit of a juror who disputes what another juror allegedly said during *deliberations.* A holding to the contrary is fraught with many undesirable and obvious perils.

We find that the three cases most heavily relied upon by the dissent do not pertain to conversations between jurors during *deliberations,* which is the sole factual setting that we are confronted with herein. Thus, the case of *People v De Lucia* (20 NY2d 275, 279, *supra)* involved outside influences on a jury, since the court found "In the instant case, it appears that several jurors not only went to the [crime] scene, but actually re-enacted the alleged crime"; the case of *People v Leonti* (262 NY 256 [1933]) involved a posttrial meeting outside the jury room between a juror and defense counsel and another attorney, and in that meeting the juror indicated that

he was prejudiced against the defendant (note: the facts in the case of *People v Leonti* are set forth in *McHugh v Jones,* 258 App Div 111, 114 [1939]), but this juror did not, as far as we can determine from these decisions, discuss with these attorneys what he said to his fellow jurors during deliberations; and the case of *McHugh v Jones* (258 App Div 111, 112 *supra, affd* 283 NY 534 [1940]) involved what a juror told other jurors "during the trial and at recess—[but not during deliberations]".

We have examined the other point raised by the defendant, which alleges that he was not proven guilty beyond a reasonable doubt, and find it to be without merit. Concur—Kupferman, J. P., Sullivan and Ross, JJ.

Carro and Fein, JJ., dissent in a memorandum by Fein, J., as follows: I respectfully dissent. I would hold the appeal in abeyance and remand the action for a hearing on defendant's motion to set aside the verdict on the basis of juror misconduct. I would limit the issue to the question of whether the juror, during the voir dire, had stated in words or in substance that she had never been the victim of a robbery and whether that was the truth.

I have no quarrel with the cases cited in the majority opinion to the effect that a jury verdict may not be impeached by inquiry into the tenor of the jury's deliberations. I agree that there should not be a hearing on this record as to how the jurors talked to each other in the jury room. However, none of the cases cited holds that where sufficient ground is shown, a hearing is not required to inquire whether a false statement was made by a prospective juror during voir dire as to a matter upon which a challenge for cause or a peremptory challenge might be founded, and I know of no cases so holding.

In *People v Pauley* (281 App Div 223), a juror, upon voir dire, falsely denied any acquaintance with a member of the police force and denied ever having had a direct interest of any kind in a criminal prosecution. The court stated the applicable principle (at p 226): "The answers given by the juror upon the *voir dire* examination were misleading, evasive and false. Whether she had some ulterior motive for concealing her true status and past experience is of no moment. The fact remains that she was permitted to sit as a juror upon the faith of her answers. The defendants were entitled to a full and fair disclosure of the facts without which they could not determine whether to accept or reject her * * * It was not necessary for the defendants to show that the juror's conduct

upon her examination and during the trial influenced the verdict. If it was likely to do so, it was sufficient to warrant the granting of the motion. *(Payne* v. *Burke,* 236 App. Div. 527.)* The juror was unfit to sit. The rights of the defendants were prejudiced by the false answers and concealment of facts. They were entitled to a trial by a jury above suspicion of prejudice and coercion. *(Clark* v. *United States,* 289 U. S. 1; *People* v. *Leonti,* 262 N. Y. 256; *People* v. *Bishop,* 66 App. Div. 415.)"

The principle is restated in *People v Horney* (112 AD2d 841), relied on by the majority. As this court noted in that case (p 841), "the court correctly directed that a hearing be held to ascertain what actually transpired." In *People v Phillips* (87 Misc 2d 613, *affd* 52 AD2d 758, *lv denied* 39 NY2d 949), a juror failed to disclose that he had been arrested on a narcotics charge, a misdemeanor, and that his case had been adjourned in contemplation of dismissal because of his promise of cooperation. A hearing was directed after verdict pursuant to a motion under CPL 330.30 (2). Although the motion to set aside the verdict was denied, the court made crystal clear that a hearing was required to determine whether the failure to disclose had the consequence of denying a fair trial.

In *People v Harding* (44 AD2d 800), this court reversed a conviction of grand larceny and directed a new trial by reason of the failure of the Trial Judge to hold a "formal hearing" on the question whether or not a juror "actually was a tainted juror". In that case, it was discovered after verdict that the prospective juror had known the defendant many years prior to the trial and harbored a grievance against him. This court stated (at p 801): "It is elemental that every defendant in a criminal case has a constitutional right to an impartial jury and accordingly, any bias or prejudice on the part of a juror, on grounds such as here disclosed, would make this conviction a nullity. The preservation of the integrity of the judicial process requires a trial by a jury above all and any suspicion of prejudice. *(Clark* v. *United States,* 289 U. S. 1; *People* v. *Leonti, supra; People* v. *Pauley, supra.)"*

Similar is *People v Howard* (66 AD2d 670), where a conviction of manslaughter in the first degree and lesser charges was reversed and a new trial ordered. In that case it was established at a posttrial hearing that juror number 2 had been a registered police informant who had failed to disclose that status when asked at voir dire whether he had ever been " 'connected with any law enforcement agency' " or whether there was any reason he could not be fair and impartial (p

671). This court noted that if the prospective juror had disclosed on the voir dire the facts which were later established at the posttrial hearing, a challenge for cause would have been sustained. Although disclosure by the juror in our case that she had been the victim of a burglary might not have warranted a challenge for cause, it might very well have been the basis of a peremptory challenge. In order for a defendant to be given a fair trial, he is entitled to honest answers from prospective jurors and to a hearing if evidence is forthcoming that a juror lied during voir dire.

There is no need for a CPL article 440 motion; there is plainly sufficient evidence now before the court in this case to warrant a hearing. In each of the above-cited cases it was noted that there was overwhelming evidence sufficient to support the conviction. Nevertheless, a new trial was directed in order to afford the defendant a trial by a fair and impartial jury. As stated in *People v Crimmins* (36 NY2d 230, 238), "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right."

That fundamental principle is more significant than the principle which cloaks jury deliberations in secrecy. Moreover, in this case there is no need to inquire into the jury deliberations. It need only be determined whether the juror had been the victim of a burglary and had failed to disclose that fact during voir dire. A hearing on that limited issue will not invade the secrecy of jury deliberations.

The majority asserts there is no authority for the proposition that a posttrial hearing should be held to inquire whether a juror gave truthful answers on voir dire where the only evidence to justify such a hearing is the unsupported affidavit of another juror.

I respectfully differ. Thus, in *People v Leonti* (262 NY 256, *supra),* a case where the defendant was of Sicilian background, postverdict affidavits were submitted to the effect that one of the jurors stated he would never believe a Sicilian under oath, thus revealing part of his deliberative thought process. The Court of Appeals ruled that the affidavits, "in the absence of denials, stand as conclusive proof of disqualification." *(Supra,* at p 257.) The Court of Appeals further stated (at p 258): "This is not a case of refusal to receive evidence of misconduct of a juror for the purpose of impeaching a verdict. *People* v. *Sprague,* 217 N. Y. 373.) As the affidavits stand undenied, they constitute convincing proof that this talesman never was eligible to become a member of the jury, that from the beginning he was disqualified on the ground of prejudice and

that his vote for conviction was, therefore, a nullity. (Cf. *Clark v. United States,* 289 U. S. 1.) The trial judge, therefore, was not deprived by the rule in the *Sprague* case of the power to summon the juror before him and to take testimony relating to the grave charge embodied in the moving affidavits. Even now we have power to remit the case for that purpose *(People v. Arata,* 254 N. Y. 565), but upon an examination of the entire record we are convinced that in the interest of justice we should order a new trial."

The majority cites and quotes from *People v De Lucia* (15 NY2d 294, 296) in support of its position. However, it overlooks the ruling in the same case, on reargument to the Court of Appeals (20 NY2d 275), where the court directed a hearing. Commenting on the *Leonti* case *(supra),* the Court of Appeals stated in *De Lucia* (20 NY2d, at p 279): "Thus, where a patent injustice to a defendant was present, we distinguished the case on a philosophical ground, although the prohibited result, the impeachment of the verdict, remained. This was a recognition that the rule against jurors' impeachment of their verdicts should not operate in every case."

The *De Lucia* court also concluded that where "a particular series of events, when proven, violates a defendant's constitutional rights, implicit in that determination is the right of the defendant to prove facts substantiating his claim." *(Supra,* at p 278.) Thus, in *De Lucia,* where the unauthorized visit by several jurors to the alleged scene of the crime made them unsworn witnesses against defendant and deprived him of his 6th Amendment right to confront and cross-examine the witnesses against him, the Court of Appeals permitted defendant to prove this constitutional violation through the use of postverdict jurors' affidavits, even though the result was to impeach the verdict. *(Supra,* at p 279.) The compelling right recognized by the court was a defendant's right to a trial by "a fair and impartial jury." *(Supra,* at p 278.)

Even the dissenting opinion of Judge Van Voorhis in *People v De Lucia (supra,* at p 286), which discussed the origins and purpose of the rule against impeaching a jury verdict, noted: "Exceptions are recognized which fall outside of the scope and policy of the rule, such as * * * *where before a juror was accepted he concealed facts which it was his duty to disclose and which, if made known, doubtless would have resulted in his being excused (McHugh* v. *Jones,* 258 App. Div. 111 [, affd* 283 NY 534])". (Emphasis added.)

In *McHugh v Jones (supra),* three jurors submitted postver-

dict hearsay affidavits attesting to statements made during trial by another juror, which if true proved her ineligibility to sit as a juror. While the alleged statements of the possibly biased juror had no relation to the deliberations, if proven true, the result would be to impeach the verdict. Nevertheless, the Court of Appeals found the affidavits admissible and ordered a hearing on the issue of the juror's eligibility (283 NY 534, 535-356, *supra). McHugh v Jones (supra)* has since then stood for the proposition that, although the result may be an impeachment of the verdict, a juror's affidavit may be used to show a concealment of facts by a juror on the voir dire. *(People v De Lucia, supra* [Van Voorhis, J., dissenting]; Richardson, Evidence § 407, at 399-400 [Prince 10th ed].)

A hearing should have been held in this case to determine whether juror number six lied during voir dire and was ineligible to sit as a juror.