# SUPREME COURT.

## REYNOLDS agt. THE CHAMPLAIN TRANSPORTATION CO.

On a motion to set aside the verdict of a jury for misconduct on the part of the
plaintiff, the affidavits of the jurors may be received to show such improper
conduct, though they could not be to show misconduct or irregularity on their
own part.

The least intermeddling or improper interference with the jury, or any of them,
by a party, during the trial, will vitiate the verdict. (*This agrees with the
principle as applied to a referee in the next preceding case of Dorlon agt.
Lewis.*)

*Warren Special Term, May,* 1853. Application to set aside
the verdict obtained against the defendants in this action for
misconduct of plaintiff with the jury, during the trial. The
action was for damages for not carrying the plaintiff's fruit on
defendant's boats, by reason of which it was spoiled and lost.

The trial was had at the October circuit, in Washington
County, in 1852. It lasted two days, having been commenced
on the 27th and finished on the 28th day of that month; and a
verdict found for the plaintiff for $154.

During the progress of the trial, and at times of recess, and
during the night, the jury were allowed to separate, and go at
large to their boarding houses, or elsewhere.

On the morning of the second day of the trial, and after the
plaintiff had rested his cause, and before the going in of the
court, three of the jurors who were empanelled to try the cause
were in the bar-room of a public house in the village of Salem,
with a number of other individuals there assembled. While
there, a constable who was attending court at the time, and who
was present in the bar-room, deposes, that the plaintiff addressed
two of the jurors, and said in the presence and hearing of the
jurors and the constable, that the defendants were a cut-throat
corporation, that they had swindled the public, that they had
defrauded him, the plaintiff, that he, plaintiff, had paid them thou-
sands of dollars, that he delivered the fruit in controversy on
said trial to the defendants, at their dock, to be carried on their

boats, and that they refused to carry the same, and went off without it; and in consequence the fruit rotted or spoiled on his (plaintiff's) hands, and he lost several hundred dollars by reason thereof, and that defendants ought to stand it, or be compelled to suffer the loss. The constable remarked to the plaintiff in the presence and hearing of the jurymen that the persons he was addressing were jurymen, and asked plaintiff if he did not know it. Plaintiff immediately replied that he knew what he was about, and *requested the constable to mind his own business, and that what he had been saying to the jurors about his suit was true;* and he, plaintiff, afterward continued addressing the jurors in substance as before, detailing, as he plaintiff insisted, what were the facts of his case, and the mismanagement of the defendants in relation to his fruit. Neither of the jurors put any question to the plaintiff or made any remarks in relation to what he said. One of them left the room immediately after the plaintiff's reply to the constable, and another remained a short time after.

Justus Remington, one of the jurors who was empanelled in the cause, and joined in the verdict, deposes, that another juror (Mr. McMullen) and himself were in company in the bar-room at the time stated by the constable, and that the plaintiff addressed him and McMullen in relation to the matters on trial, and said, defendants were a lot of swindlers, that he, plaintiff, had paid them a great deal of money, that they had defrauded him by not carrying his fruit. He confirms substantially the statement of the constable; and adds that as soon as it occurred to him that there was any impropriety in listening to the plaintiff he left the room.

Another of the jurors (Mr. Warner) deposes on the part of defendants, that plaintiff was talking to the two jurymen, Remington and McMullen, in relation to the matters in controversy, and in relation to the damages he had sustained on account of the defendant's acts. He also confirms the constable in his statements, and testified that he left the room immediately after the reply of plaintiff to the constable; that the remarks of plaintiff were not called for by anything said at the time, and

Reynolds agt. The Champlain Transportation Co.

that neither of the jurors present put any questions or made any remarks.

One of the attorneys for defendants deposes that in a conversation with Remington on the 26th, and with Warner on the 21st of January, 1853, they each informed him of the facts as substantially stated by them in their affidavits.

In opposition to the motion the plaintiff makes an affidavit, in which he swears that he did not address the remarks mentioned in the defendants' affidavits to any of the jurors who tried the cause; that he came into the bar-room on the morning of the second day of the trial, when some persons, strangers to him, put to him questions concerning the trial, and that in answering them he stated substantially, as deposed in defendants' affidavits, that he did not know at the time that any of the persons present were jurors, as all the persons sworn on the jury were unknown to him, except one, who was not then present; that as he concluded his remarks, the constable, who made his affidavit, told him in an insolent manner, that he should not talk to jurors, and that on his replying that he was not talking to jurors, the constable answered that he should not talk in the hearing of jurors; that he, plaintiff, rejoined that he was not aware he was talking in the presence of jurors and would stop, and did stop, and that he did not tell the constable to mind his own business, and that he knew what he was about. The jurors, Remington and Warner, have made additional affidavits which were read by the plaintiff in opposition to the motion. Warner substantially deposes as he did in his first affidavit, except that he does not now remember what epithets the plaintiff made use of toward the defendants, nor what reply plaintiff made to the constable. He swears that the remarks were after the plaintiff had rested, and were a detail of what he had proved on the trial; that they had no influence upon his mind in rendering his verdict; that he was governed, in assenting to that, wholly by the evidence. Mr. Remington does not now remember all the remarks of the plaintiff, but that plaintiff said defendants ought to have carried his fruit, and that they were a set of cut-throats; that the remarks made no impression

upon his mind, and he rendered his verdict according to the evidence without reference to them. The other juror who was present swears, that he heard none of the remarks made by the plaintiff.

. A case was made in the cause, and settled on the 22d, and a copy prepared and served on the 26th of February, 1853. The facts detailed in the affidavits were first communicated to defendants' attorney about the 21st of January, 1853; the case forms a part of the basis for the motion. It was first noticed for the Fulton Special Term, in April, 1853; and was postponed at request of plaintiff's counsel until this term. A special term was held at Elizabethtown on the first Monday in March.

> JOSEPH POTTER, *for Plaintiff.*
> GIBSON & DAVIS, *for Defendants.*

C. L. ALLEN, Justice. It is objected that the motion should have been noticed for the special term in March, and that it now comes too late.

I think the papers show a sufficient excuse for not making it at that term. The facts were not discovered until the 21st of January, 1853. The plaintiff desired to ground his motion partly upon the case as he had a right to do, which was not settled until the 22d of February following, too late to engross and prepare a copy with the other papers to serve in time for the first Monday in March, the time for holding the Essex Special Term. The motion was noticed for the next earliest day, at the special term in Fulton, and was postponed until this time, at the request of the plaintiff. Under these circumstances the defendants are not chargeable with laches.

2. This brings me to the merits of the motion. I have carefully looked at the papers, and into all the cases which have been cited, and which I can find, having a bearing upon the question presented. No impropriety, in my judgment, can be charged upon either of the jurors. They were in the bar-room casually during the recess of the court, availing themselves of the privilege of being at large, which had been

Reynolds agt. The Champlain Transportation Co.

accorded to them by the court, with the consent of the parties. They did not converse with the plaintiff, or put any questions to him whatever. They maintained a strict silence during the time he was making his remarks, and whatever impropriety there was in listening to these remarks, it seems they left the room as soon as the idea of such impropriety was suggested to their minds. No improper feeling or motive whatever is discoverable in either of them ; and if the motion rested upon the ground of improper conduct on their part, it would at once be denied. Neither would their own affidavits be received for the purpose of establishing any such position, as it has been well and repeatedly settled, that the affidavit of a juror cannot be received to impeach the verdict, for mistake or error in respect to the merits, nor to prove irregularity or misconduct on his part or that of his fellows. Clum agt. Smith, (5 *Hill*, 560,) and cases cited, (4 *John. R.* 487.)

But the affidavits of the jurors may be received as well as others for the purpose of showing improper conduct on the part of the plaintiff; and the question is here, whether such misconduct has been shown on his part as ought to set aside the verdict in this case.

In the case of the People agt. Douglass, (4 *Cow.* 26,) a case of murder, the court granted a new trial, because two of the jurors separated from their fellows and went to their lodgings and ate cakes and drank spirituous liquors ; and the court granted a new trial for that reason ; but remarked, in the course of delivering their opinions, that in a civil suit it is perfectly clear that a separation of the jury without, and even contrary to the direction of the court, would not of itself be sufficient to set aside the verdict. In this case the jury separated by the consent of the parties, and the permission of the court, and their separation clearly forms no ground for interference with the verdict.

But while thus separated it was not proper for them to converse with any one, or to listen to any conversation addressed to them; and it was highly improper for the plaintiff to approach any of them, or to address any remarks to either or any

of them in relation to the subject matter of the suit.   It has been well remarked, that when in the course of a trial a juror has in any way come under the influence of the party who afterward has the verdict, that such verdict ought not to stand. Wilson agt. Abrahams, (1 *Hill*, 207.)   But a trifling irregularity on the part of the jury, such as a juror leaving his seat, but having no conversation with any person in relation to the suit, will not vitiate the verdict, unless there is some reason to suppose that the party moving may have suffered by the misconduct of which he complains, (1 *Cow*. 221; 2 *ib*. 589; 3 *ib*. 355,) and so are the ancient cases.

In the case of Smith agt. Thompson, (1 *Cow*. 221,) the court decided that where two jurors, after the jury had retired to consider of their verdict, separated from their fellows, and were gone some hours, but returned and joined in the verdict, *there appearing to have been no probability of abuse,* they would not set aside their verdict. · Many cases are collected in a note to that case—both English and American, the result of the conclusions of all which is substantially as in the case itself— one of them decidedly intimating that conversation with a juryman, or in his presence, by the party in whose favor the verdict was rendered, would be sufficient to set it aside.   In the case of Horton agt. Horton, (2 *Cow*. 589,) the court say, that although the mere separation of the jury, without their sanction, may be a contempt of court, yet it will not be sufficient to vitiate the verdict—but they remark, that if the slightest suspicion had appeared that the privilege had been abused, to the injury of the party, the verdict should be set aside.

In Knight agt. the Inhabitants of Freeport, (13 *Mass*. 248,) a son-in-law of the plaintiff said to one of the jurors after empanelling, and before trial, that the cause was of great consequence to him, and that if it went against the plaintiff he should have to pay the costs, and that defending the suit was a spiteful thing on the part of the inhabitants of Freeport; the court said, "Too much care and precaution cannot be used to preserve the purity of jury trials," and the verdict was set aside.

The case of Coster agt. Merrit (3 *Brod. and Bingham*, 257,

reported in 7 *C. L.* 633) decides, that if the prevailing party has made communications to members of the jury reflecting upon the character of his adversary, the verdict will be set aside. In that case, it was sworn that handbills reflecting on the plaintiff's character had been distributed in court and shown to the jury on the day of trial. The court would not receive from the jury affidavits in contradiction, and granted a new trial against the defendant, although he denied all knowledge of the handbills. It was remarked that it might be of pernicious consequence to receive such affidavits in any case, or to assume that a jury had been unduly influenced.

The case of Oliver agt. The Trustees of First Presbyterian Church, &c., in Springfield, (5 *Cow.* 284,) is similar to the present in some respects. The jury, in that case, had procured a separation through artifice. Before they reassembled, some of them were seen in a bar-room, *where the cause was much talked of*. The court remarked, " That in cases where verdicts had been sustained, notwithstanding the separation of the jury, *there was no suspicion of abuse,* it appearing *affirmatively* that there was nothing that followed the separation which could be injurious to the party seeking to get rid of the verdict. But in that case, that *several of the jurors were found in a public bar-room, where the subject of the suit was much talked of in their presence,* and it is not pretended that they did not listen to the conversation." The court thought it enough that conversation was carried on, relative to the trial, (and it does not appear there by the parties,) in the presence of some of the jurors. It has been denied that if the prevailing party have made communications to members of the jury reflecting upon the character of his adversary, the verdict will be set aside. The case (in *Brod. and Bing.*) above cited, was for circulating handbills defaming the party, and the jurors swore they had not seen the handbill; yet the court set aside the verdict.— See *Graham on New Trials,* 47, 54.

I think the charge of reflecting on the character of the defendants is in this case clearly made out; two of the jurors, and Fisk, the constable, swear to it, and the plaintiff himself does

not fully deny it in his affidavit.  He deposes, it is true, that he did not know he was talking in the presence of any of the jury; but three of the affidavits on the part of the defendants show, that he was told some of the jurors were present, and was cautioned against making his remarks in their presence, and that he replied, he knew his own business, and continued his remarks.  The affidavits show, too, that he detailed the facts, or what he called the facts in his case, saying he had lost several hundred dollars by reason of the failure of defendants to carry his fruit.  It is said that plaintiff said no more than what had been proven in court—that the remarks contained no new evidence—and that it is not to be presumed that jurors are to be influenced by what an interested plaintiff says, apart from the evidence given in the cause.  The plaintiff did not confine himself to the evidence as detailed in court.  He charged the defendants with the grossest crimes and misdemeanors, and in a manner calculated to· prejudice the minds of his hearers. Besides, if it was strictly true that he did no more than to detail the evidence, it was improper to sum up his cause out of court, in a bar-room, to the jury or to any of them.  A verdict has been set aside where a witness repeated over his evidence apart to the jury, and a repetition by the plaintiff is no better or purer.  The court will not inquire whether the acts complained of influenced the verdict.  In the case before cited (in *Brod. and Bing.*) the court would not permit affidavits of the jurors to be read, and would not assume that the minds of the jury had been influenced.  And in the case of Whitney agt. Whitman, (5 *Mass.* 405,) the court refused to examine jurors to prove that they were not influenced by the paper which had been improperly put before them; they said it was impossible to decide in what manner their minds were influenced in forming their verdict.

In Knight agt. Inhabitants of Freeport, (17 *Mass.* 218,) the court say, " The attempt to influence the juror in this case was grossly improper, and ought to be discountenanced.  It is not necessary to show that the mind of the juror was influenced by the attempt.  Perhaps it is not in his power to say whether he was influenced or not.  If he was, there is sufficient cause to

Reynolds agt. The Champlain Transportation Co.

set aside the verdict; and if he was not, and the party who has gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes. Too much care and precaution cannot be used to preserve the purity of jury trials, and every one ought to know that for any, *even the least* intermeddling with jurors, a verdict will always be set aside."

If the plaintiff has a good cause of action in this case, perhaps he ought to recover a much larger sum than the amount of the present verdict, and by a new trial, if he makes out his case, and does not interfere improperly with the jury, he will finally be benefited by obtaining the whole sum to which he claims he is entitled.

On the whole, I am of opinion that the verdict should be set aside, and a new trial granted. The defendants contend that the plaintiff should pay the costs of the trial. It has been usual, I believe, in like cases, to let the costs abide the event. I shall do so here, but plaintiff must pay $10 costs of the motion.