### LEVINSON v. ZIPKIN.

(Supreme Court, Appellate Term. November 30, 1909.)

1. TRIAL (§ 314*)—CONDUCT OF TRIAL—URGING AGREEMENT OF JURY.

While a judge should urge the jury to endeavor to secure a verdict, and may properly urge them to deliberate in a spirit of concession, yet, in view of the fact that they have a right to disagree, and should do so, if they are not honestly of one mind, nothing should be done to prevent a free and voluntary verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 747, 748; Dec. Dig. § 314.*]

2. TRIAL (§ 314*)—CONDUCT OF JUDGE—COERCING VERDICT.

A jury, after deliberation, notified the judge that there was no possibility of an agreement, upon which the judge stated that jurors often stick to an opinion regardless of what any one else in the jury may say, and that, if there was anything of that kind in the case, they were committing willful contempt, that, so long as the jury should hold an honest opinion upon the evidence, no one could object, but that disagreements were most unfortunate, and then asked, "Is there anything I can say to you?" to which the jury responded, "We have argued." The court then asked them to agree, stating that if their verdict was wrong an appellate tribunal would correct it, and said that if there was a chance of agreement they could go to the jury room for 5 or 10 minutes more, and the jury retired and returned a verdict. *Held*, that the verdict should be set aside as the court's remarks tended to coerce it under fear of punishment of contempt and were calculated to impress the jury that it was immaterial whether they arrived at a correct or wrong verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 747, 748; Dec. Dig. § 314.*]

Appeal from City Court of New York, Trial Term.

Action by Solomon Levinson against Nathan Zipkin. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Max D. Steuer, for appellant.

Bogart & Bogart, for respondent.

SEABURY, J. Upon this appeal it is necessary to discuss but one aspect of the case. A new trial must be ordered because the verdict of the jury was not freely and voluntarily rendered. After the jury had retired for deliberation, they returned to the courtroom, and the court asked, "Is there any possibility of agreeing?" To this question the foreman of the jury answered, "None whatever." The court then inquired if there was anything that the court could say upon the law of the case that would help or aid them in reaching a verdict. "If you are far apart," continued the court, "on the facts of the case, and cannot agree, that is a different proposition; but often you will find ju-

---

rors who will go out and entertain an opinion and stick by that opinion regardless of what any one else in the jury may say. You will find other jurors who will refuse to discuss the testimony with their associates. If there is anything of that kind in this case, you are committing willful contempt of court and are liable to punishment for that. So long as a juror holds an honest opinion, no one else can object to that, if it is an honest opinion on the evidence in the case; but disagreements are most unfortunate, not alone for litigants, but for lawyers and the county of New York. It is at considerable expense that the county maintains its machinery to try all these litigated actions, and a disagreement means, gentlemen of the jury, that the case goes back to the calendar, and time has to be taken up in presenting it to 12 other men. Lawyers have to be paid for their services, and litigants have to give up their time to come here again to give their evidence. * * * Is there anything I can say to you?" To this last inquiry the foreman of the jury responded, "We have argued." The record then discloses the following:

"The Court: I am the last one to keep a jury any longer than necessary. If you say it is impossible for you to agree upon a verdict or reach a conclusion after full consideration of the facts, I will let you go; but I ask you to agree upon some verdict in this case. If your verdict is wrong, there is an appellate tribunal which will correct the same; but let it be determined here, if it can be, whether the plaintiff or defendant is entitled to a verdict. If you think there is a chance, if I let you go back to the jury room for 5 or 10 minutes more, of agreeing upon a verdict, you may do so; otherwise I will discharge you now. Foreman of the Jury: We will try it again. The Court: All right, do so, and, if you can, come to some agreement. (The jury then retired to the jury room, and after deliberation returned to the courtroom and returned a verdict in favor of the plaintiff in the sum of $905.)"

We think the address of the court to the jury tended to coerce a verdict under fear of punishment for contempt, and urged upon the jury, as an inducement for them to agree, considerations foreign to the issues they were called upon to determine, and was well calculated to impress the jury with the idea that it was entirely immaterial whether they arrived at a correct or wrong verdict. The statement that the jurors might be committing a willful contempt of court for which they would be liable to punishment was entirely improper. The exhortation to the jury to agree upon "some verdict in this case," followed, as it was, by the statement that, "if your verdict is wrong, there is an appellate tribunal which will correct the same," was equivalent to telling them that it made no difference whether they decided the case correctly or incorrectly, so long as they reached a verdict. The instruction that, if their verdict was wrong, it would be corrected by an appellate tribunal, was such as to lead them to believe that they had no responsibility resting upon them to reach a correct conclusion. They may well have concluded from the judge's charge that their duties as jurors would be fully performed if they agreed upon a verdict without regard to the evidence or the law.

It has been said that:

"It is both proper and commendable that a judge, after the labor and expense of a trial, should endeavor by all legitimate means to secure a verdict. To this end he may properly urge the jury to engage in their deliberation in a spirit of liberal concession." Green v. Telfair, 11 How. Prac. 260, 262.

In the present case, however, the learned justice in the court below went far beyond these limitations. In urging jurors to agree, it is not to be forgotten that they have a right to disagree, and that, if they are not honestly of one mind, it is their duty to disagree. The necessity for having a jury arrive at their verdict free from any suggestion of threats or coercion has been so clearly pointed out by Chief Justice Parker in People v. Sheldon, 156 N. Y. 277, 50 N. E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564, that any further comment upon it is unnecessary.

From the record before us we cannot infer that the verdict of the jury was the result of a consideration of the evidence and the law. As was said in Green v. Telfair, supra:

"A verdict thus obtained ought not, I think, to be conclusive upon the parties. It is not what the law contemplates—the free and independent judgment of 12 indifferent men, acting without constraint, and with sole regard to the obligation they had taken upon themselves to render a true verdict according to the evidence. I think sound policy and a faithful maintenance of the right of trial by jury require that this verdict should not be allowed to stand."

The judgment is reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

