LEON WILKINS, Plaintiff, *v.* BERT ABBEY, Defendant.

Supreme Court, Steuben County, June 30, 1938.

*Vincent J. Welch,* for the plaintiff.
*Joseph J. Nasser,* for the defendant.

LAPHAM, J.  This is a motion to set aside a verdict of no cause of action in favor of the defendant, and for a new trial upon the merits in an action on a promissory note given in connection with the sale of an automobile by the plaintiff to the defendant.  The defendant interposed the defense of fraud and breach of warranty but the defense of fraud was stricken from the answer on the plaintiff's motion at the close of all the evidence.

In support of his motion the plaintiff relies upon the misconduct of a juror in concealing on the *voir dire* examination, her intimate knowledge of the defendant and of his situation, and in using this knowledge in the deliberations of the jury to win sympathy for the defendant; upon the absence of the Presiding Justice who was not available to give the jury further instructions; upon the misconduct of one of the deputy sheriffs in charge of the jury; and upon the misconduct of the defendant in testifying falsely on the trial about the condition of the automobile which was the subject matter of the sale.

An examination of the affidavits and briefs submitted by both parties has convinced me that justice requires the granting of a new trial because the verdict was not the free and voluntary judgment of a body of jurors acting without constraint or duress.

The plaintiff has submitted affidavits of the foreman and two other members of the jury to show that it retired for deliberation late in the afternoon around four-thirty o'clock, that they did not reach a verdict until around nine o'clock in the evening, and that at approximately five minutes to nine o'clock a deputy sheriff in charge of the jury came to the jury room and informed them that " the jury only had five more minutes in which to arrive at their verdict."  The defendant for his part has submitted only one affidavit of a juror who swears that the officer inquired whether the jury had arrived at a verdict, that the juror replied that they needed another minute, and that the officer stated in reply that " we could have five minutes if we needed it."  Although the defendant has gone to great lengths in procuring affidavits of jurors, all of them except that one are silent on this phase of the motion. There is no affidavit by the court officer submitted in denial of the fact set forth in the moving affidavits and this omission is significant. There is a tacit admission that the officer did declare that only five more minutes would be vouchsafed in which to agree on a verdict. The pressure and the suggestion of coercion are implicit in the remarks of the officer in charge of the jury, in spite of the innocent and innocuous interpretation which the defendant seeks to impose upon them.  The limitation of time on the jury's deliberations decreed by this officer was tantamount to an unlawful interference

with the free and independent deliberations which are the very heart of the jury system.

In the very early days of the common law, jurors were kept together as a body as prisoners of the court until they had reached a verdict and this coercion was regarded as an essential element of trial by jury. (See *People* v. *Sheldon,* 156 N. Y. 268, 275; *People ex rel. Stabile* v. *Warden,* 202 id. 138, 144.) The old rule has been discarded and discredited, and modern law insists upon independence as the vital and distinctive attribute of the jury system. The courts have been vigilant to resist any attempt on the part of judges to threaten, coerce or intimidate a jury in order to affect their deliberations or to prod them into an agreement, and eloquent voices have been raised in protest when any form of duress or coercion has raised its head. (*People* v. *Sheldon,* 156 N. Y. 268; *People* v. *Faber,* 199 id. 256; *Twiss* v. *Lehigh Valley R. R. Co.,* 61 App. Div. 268; *Levinson* v. *Zipkin,* 65 Misc. 203; *Green* v. *Telfair,* 11 How. Pr. 260.) *A fortiori* coercion or pressure applied upon a jury by a subordinate officer of the court falls under the same condemnation and is sufficient to invalidate a verdict where the natural tendency of such misconduct is to influence the jury in their deliberations. (16 R. C. L. 297.)

The restriction of time which the officer imposed in this case was such an interference with the free and untrammeled deliberations of the jury as to amount to unlawful coercion and duress, and the natural tendency of such conduct was to compel a verdict. It denied to the jury their fundamental right to disagree. It narrowed the range of the full and complete inquiry into the evidence which the jury was bound to make. It counseled in effect, if not in substance, a surrender of convictions and conclusions, however honestly and conscientiously held, in order to reach a verdict. It carried an intimation that it was more important that the jury reach *a verdict* than that they should reach a *true and just verdict.* It was a tacit invitation to hold lightly the oath which each juror had taken to render a true verdict according to the evidence. It minimized the importance of integrity and sound judgment which are made qualifications of a trial juror by section 502 of the Judiciary Law, and it ignored the basic principle to which Judge CHASE referred in *People* v. *Faber* (199 N. Y. 256, 259).

" The verdict of a juror should be free and untrammeled. In arriving at a verdict the judge presiding at the court must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict. * * *

" Urging a jury to an agreement contrary to the individual opinion and judgment of one of the jurors may be coercion. The verdict

of a jury should not be the general average of the views of its individual members but the consensus of individual judgment. Every juror takes an oath that is individual, and that puts upon him as an individual the responsibility of correctly determining the matters submitted. He is a member of the body of twelve men, but he acts individually and is alone answerable to his conscience."

It is true that the officer in charge of the jury made no threat of punishment or detention in the event the jury failed to come to an agreement within the time allotted, but the unequivocal command that the jury might have only five minutes more within which to reach a verdict might, to the layman, be more intimidating than the naming of a specific and precise form of punishment if the command were unheeded.

The defendant attacks the use of affidavits of jurors to show misconduct on the part of the officer in charge of the jury and contends that such affidavits fall within the prohibition of the rule that jurors will not be heard to impeach their verdict. (*People* v. *Sprague*, 217 N. Y. 373; *Dalrymple* v. *Williams*, 63 id. 361, 363; *Payne* v. *Burke*, 236 App. Div. 527.) It is well settled on grounds of public policy that jurors will not be permitted to disclose their own misconduct, but the courts of this State are in apparent conflict on the propriety of the use of affidavits of jurors to show misconduct on the part of third persons or on the part of an officer in charge of the jury. Cases which sanction the use of such affidavits to show the existence of such misconduct include *Thomas* v. *Chapman* (45 Barb. 98); *Reynolds* v. *Chaplain Transp. Co.* (9 How. Pr. 7); *Wiggins* v. *Downer* (67 id. 65), and *People* v. *Smith* (187 N. Y. Supp. 836, 843). In opposition stand *Williams* v. *Montgomery* (60 N. Y. 648) and *Cutin* v. *Dupper* (152 Misc. 382).

In *Thomas* v. *Chapman* (*supra*) the court granted a motion to set aside the verdict because of misconduct of the officer supervising the jury upon affidavits of jurors which showed that the officer, among other things, had told the jury that the case was clear for the plaintiff and that, if the jury did not agree, he would lock them up for the night. This ruling was followed in *People* v. *Smith* (*supra*), where the court received affidavits of jurors to show that in a prosecution for murder handcuffs were delivered to the jury by the sheriff.

The case of *Williams* v. *Montgomery* (*supra*) is not a conclusive authority for the ban on the use of affidavits of jurors to show misconduct on the part of an officer for the motion for a new trial in that case was made upon affidavits based in part on the misconduct of the jurors themselves. In *Gutin* v. *Dupper* (152 Misc. 382) the officer delivered no categorical command limiting the time for the

jury's deliberations and the officer denied making the statements attributed to him. The express ground of the decision in that case was that the affidavit failed to show that the acts of the officer influenced the verdict and the remarks of the justice on the impropriety of receiving an affidavit from a juror to show an improper communication from the officer to the jury were *obiter dicta.*

If a choice is to be made between these opposing rules, the choice should fall on the rule which permits the reception of these affidavits when they are directed at the misconduct of an officer. There is a legitimate distinction between the acts of the jurors themselves during the trial of the case, even outside the jury room, or the deliberations of the jury in the jury room, and the influences which are called into play by outside forces and which are extraneous to their deliberations. Sound public policy is promoted by shielding the discussions of the jury from disclosure but this policy does not require that force brought to bear improperly on the jury from without shall be similarly protected against disclosure. (*Ayres* v. *Village of Hammondsport,* 13 Civ. Prac. Rep. 236, 77 N. Y. St. Repr. 706.) There is little danger, in my judgment, that the recognition of such a rule will encourage the unsuccessful litigant to attempt to persuade jurors to swear to misconduct on the part of officers having them in charge, and none at all that freedom of discussion in the jury room will be impaired. There is, moreover, reason for protecting from disclosure errors, mistakes, or irregularities on the part of jurors unfamiliar with the rules of law and the application of these rules to the facts, but there is no sound reason for permitting officers of the court to engage in improper conduct that may reasonably tend to prejudice a litigant. That jurors may err is a risk inherent in the jury system; that officers of the court may be guilty of misconduct is a wholly unnecessary risk to which no party should be subjected. When an officer has threatened or coerced a jury in any way, he should not be shielded by a rule that was framed to meet another situation and a party whom such acts may reasonably be supposed to have prejudiced should not be deprived of what may be the only means of securing evidence of such misconduct. It is supremely important that the conduct of these to whom the administration of law is entrusted shall be beyond reproach. (*Payne* v. *Burke,* 236 App. Div. 527, 528; *Matter of Vanderbilt,* 127 id. 408.)

In addition to the cases in New York headed by *Thomas* v. *Chapman (supra),* a respectable array of authorities supports the rule permitting the reception of affidavit of jurors to show the misconduct of officers in charge of the jury. (*Mattox* v. *United States,* 146 U. S. 140; *Emmert* v. *State,* 127 Ohio St. 235; 187 N. E. 862; *Alabama*

*Fuel & Iron Co.* v. *Rice,* 187 Ala. 458; 65 So. 402; *State* v. *LaGrange,* 99 Iowa, 10; 68 N. W. 557; *State* v. *Riggs,* 110 La. 509; 34 So. 655; *Carpenter* v. *Carpenter,* 48 R. I. 56; 135 A. 325; *McBean* v. *State,* 83 Wis. 206; 53 N. W. 497; *Sprinkle* v. *State,* 137 Misc. 731; 102 So. 844.)

In the view which I have taken on this application, the other grounds urged in support of the motion require only passing comment. The evidence of the defendant's misconduct in swearing falsely about the condition of the automobile which the defendant had purchased from the plaintiff is too tenuous in the light of the conflicting affidavits to show a fraud upon the court. There is no competent evidence before the court of the disqualification of one juror because her statements in the jury room, which are relied on by the plaintiff to show her concealment of her intimate acquaintance with the defendant and her activities to gain sympathy for the defendant, are so much a part of the deliberations of the jury that affidavits of other jurors or of counsel, based on information furnished by other jurors, are inadmissible. (*Payne* v. *Burke,* 236 App. Div. 527; *People* v. *Sprague,* 217 N. Y. 373; *Gregory* v. *Bijou Theatre Co.,* 138 App. Div. 590; *Gambon* v. *City of New York,* 153 Misc. 401, 403.) The contention of the plaintiff upon this motion that he was prejudiced by the absence of the Trial Justice during the course of the jury's deliberation is without foundation in the instant case because he has failed to show the nature of the instructions sought by the jury or that he was prejudiced by the inability of the jury to obtain them. It affirmatively appears, on the other hand, from an affidavit submitted by the defendant, which stands uncontradicted, that the jury merely wanted to know whether they could render a verdict of no cause of action. The jury actually did render such a verdict and it cannot be said, therefore, that the plaintiff was harmed because of the absence of the Trial Justice.

This motion, to my mind, has wider and graver implications than the immediate issues which it raises in so far as they affect the parties to this action. At this time, when the attack on democracy is proceeding on many fronts, the right of jurors to free and untrammeled deliberation and the right of a suitor to an independent jury must be zealously safeguarded. Only verdicts, the result of free and independent action, can command the public respect and confidence so essential to the preservation of the jury system and the principles in which it is rooted. In the advance toward a re-consecration and strengthening of democratic principles, the courts should be in the vanguard.

The motion to set aside the verdict and for a new trial is granted, without costs.

Let an order enter accordingly.