SADIE MOREHEAD, Plaintiff, *v.* MILTON D. GRAHAM, Defendant.

Supreme Court, Trial Term, Oneida County, November 30, 1948.

*Albert Monahan* for defendant.

*Arthur J. Foley* for plaintiff.

SEARL, J. Plaintiff has obtained a jury verdict for personal injuries.

Defendant has moved for a new trial: 1. On the minutes of the court. 2. By stipulation to effect that a second motion be considered as made on notice and on papers for a new trial due to alleged misconduct on the part of two of the jurors during the progress of the trial. Defendant, a physician, maintained his home and office two city blocks from the courthouse. Plaintiff was one of defendant's patients. On a winter day in March, 1946, plaintiff came to defendant's office for treatment. Six wooden steps led from the defendant's office to the sidewalk. Inside the office defendant had posted a sign reading: "Take hold of railing while going down steps." Plaintiff claimed she obeyed this instruction. However, because of ice on the steps,

together with the fact that they were improperly constructed, the treads not being level, her feet went out from under her, causing her to fall and sustain injuries.

During the trial a small photograph was received in evidence which indifferently showed the condition of the steps soon after the accident and before any repairs were undertaken. Counsellor for plaintiff, apprehensive lest the jury might take it upon themselves to view the steps, located near the Court House, informed the court and opposing counsel, not in the presence of the jury, of the fact that the steps had been rebuilt. Without unduly calling to the attention of the jury the present condition of the steps, the court warned the jury before the noon recess not to discuss the case with others nor among themselves until finally submitted. Later, in attempting to prevent the jury from considering any information acquired outside the courtroom, the court warned them to consider only such facts as had been referred to by evidence offered in court.

After rendition of a verdict for plaintiff, defendant moved for a new trial on the usual grounds, and especially because of a certain statement made by plaintiff's counsel on summation. Defense counsel asked that decision on the motion be held until the counsel's remarks be transcribed by the stenographer and handed to the court. Nearly two months later, while filing of briefs was being awaited, defense counsel filed with the court an affidavit of Katharine Graham, wife of the defendant. This was to effect that during the noon recess of April 22d, the day of the conclusion of the trial, she talked with two of the jurymen while standing in the vicinity of the steps in question, that: " One of the jurymen in the conversation made the remark that the steps did not appear to be the same as they were in the picture which had been introduced in evidence and I unthinkingly said to them that the steps had been changed because we had been instructed to change them by the insurance company."

As the court was not satisfied in acting alone on this affidavit of the wife of the defendant, who was present in court when the jury had been warned against discussion of the case during trial, a special hearing was held in Utica on July 14, 1948.

As both plaintiff and defendant were in delicate health, defense counsel stipulated the action would not abate in event of death of either litigant. It was also stipulated by both counsel that the application be made as though on motion papers.

Katharine Graham, called as a witness by defendant, reiterated in substance the statements made in her affidavit except that she testified she was unable to identify the two men with whom she talked as being members of the jury.

One Dr. Albert R. Hatfield, Jr., previously testified as a witness for plaintiff at time of trial, before the noon recess, on April 22d. He then related his treatment of the plaintiff and as to permanency of her injuries. After the noon recess he was recalled to the stand by defendant, stated that he had called at the office of defendant during the noon hour and wished to modify his former testimony as to the extent of the permanency of plaintiff's condition. On July 14th, Dr. Hatfield was again called by defendant. He testified that after he had talked with defendant at his office during the noon recess of April 22d, and while leaving the office, he observed two men looking at the steps and talking with defendant's wife. He stated that in his opinion the two men were members of the jury.

In view of this unsettled state of the testimony, the only course left to the court was to request the attendance of each person who had been a member of the jury. This was done and on the afternoon of October 27th each member took the same seat in the jury box as occupied at the time of the trial.

Katharine Graham and Dr. Hatfield each testified, but not in the presence of each other. Strangely enough, the reverse of what occurred on July 14th took place. Dr. Hatfield, after looking over the jury in their seats, stated he could not identify the two men he saw talking with Katharine Graham at the steps on April 22d. Conversely, Mrs. Graham immediately identified jurors No. 4 and 11 as the men she talked with.

The court inquired of juryman 4 if he was willing to testify. After advising the juryman of his rights, and after reading the affidavit of Mrs. Graham to the jury, No. 4 juryman testified the affidavit was correct except that no mention was made in the conversation as to an insurance company. Juryman No. 11, after being also advised as to his rights, testified to the same effect.

Plaintiff's counsel urges that his client's rights would be unjustly jeopardized were a new trial to be granted; that plaintiff has done no wrong, urging that the fault, if any, lies with defendant's wife in entering into conversation with men she knew were to decide her husband's case. There is some merit in plaintiff's position, still no cause can be properly decided from evidence gathered on the streets.

As members of a jury cannot impeach their verdicts by their own testimony, this court strikes from the record and disregards their testimony as to their own acts and conversation with Katharine Graham, the receipt of which might be deemed contrary to public policy. (See *Taylor* v. *Everett,* 2 How. Prac. 23;

*Reynolds* v. *Champlain Transportation Co.,* 9 How. Prac. 7; *Miller* v. *Gerard,* 200 App. Div. 870). The testimony of Katharine Graham is sufficient to indicate the verdict was not based alone on legal evidence.

Granting, as the court must, a new trial on this ground, it is unnecessary to pass on the question as to whether the remarks of plaintiff's counsel in summation are sufficient grounds for granting the same motion. These remarks, '' I don't think you will find anyone crying very much about it if a good decent sized verdict is brought in here '', would hardly be susceptible of other than but one inference.

As to the fears expressed by plaintiff's counsel that a subsequent jury will be moved by the same curiosity to view the steps, the court believes the embarrassing experience the instant jury has just undergone may have some restraining effect in persuading future jurymen and jurywomen not to experiment by themselves. When curiosity is more controlling than the admonition of the court, trouble is inevitably invited. It is too costly for all concerned, including the taxpayers.

Order accordingly, costs to abide event.