UNITED STATES of America ex rel. Fred DeLUCIA and Salvator Montella, Appellants,

v.

Daniel McMANN, Warden of Clinton Prison of the State of New York at Dannemora, New York, Appellee.

No. 301, Docket 30605.

United States Court of Appeals Second Circuit.

Argued Jan. 10, 1967.

Decided March 7, 1967.

William Sonenshine, Evseroff, Newman & Sonenshine, Brooklyn, N. Y., for appellants.

Brenda Soloff, Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

State prisoners DeLucia and Montella appeal from an order of the United States District Court for the Northern District of New York denying without a hearing their joint application for a writ of habeas corpus.

After a jury trial appellants were convicted in the New York Supreme Court for Queens County of an attempted burglary in the third degree and of possession of burglar's instruments. Information of jury misconduct, an unauthorized clandestine view by some jurors of the premises of the alleged crimes, was discovered by appellants after the jury's verdict was rendered. They moved before sentencing to set aside the verdict. The trial court denied the motion.

On June 28, 1963, DeLucia was sentenced to concurrent terms of 2½ to 10 years imprisonment on the two counts and Montella was sentenced to 2½ to 5 years imprisonment on the burglary charge and given a suspended sentence for possession of burglar's instruments.

After the imposition of the sentences an investigator employed by counsel for

the convicted men obtained from five members of the jury statements disclosing that jurors had visited the scene. These statements were attached to a motion addressed to the trial court praying for a rehearing of the denied motion to set aside the verdict. This motion was also denied, but reargument of the original motion was granted and the original decision thereon was adhered to.

The appellants' convictions, as well as the denial of the motion to set aside the verdict, were affirmed without opinion by the Appellate Division for the Second Department. People v. DeLucia, 21 App. Div.2d 805, 252 N.Y.S.2d 259 (1964). Appeal was taken to the New York Court of Appeals by permission of a judge thereof and the judgment of the Appellate Division was affirmed by a divided court (4–3). People v. DeLucia, 15 N.Y.2d 294, 258 N.Y.S.2d 377, 206 N.E.2d 324 (1965). The United States Supreme Court denied certiorari. DeLucia v. New York, 382 U.S. 821, 86 S.Ct. 50, 15 L.Ed.2d 67 (1965). Having thus exhausted their state remedies, appellants, alleging a denial of due process under the United States Constitution, brought their petition for a writ of habeas corpus to the court below. The petition was denied and dismissed without a hearing on the ground that the jury's alleged "irregularity does not rise to the stature of being State action violative of fundamental liberties guaranteed by the Federal Constitution." On May 16, 1966 the district judge granted a certificate of probable cause and the within appeal followed. Before the appeal was argued the opinion and order of the United States Supreme Court in Parker v. Gladden was handed down on December 12, 1966. In view of Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), we vacate the order below denying and dismissing the petition and, in order to give the New York courts an opportunity to reconsider the previous disposition of appellants' claims, we direct that the petition below be dismissed without prejudice to the rights of petitioners to renew their petition in an appropriate federal district

court, after reconsideration by the New York courts, in the event that relief is denied them by the state courts.

In the early hours of the morning of May 14, 1962 at about 5:30 A.M. three New York City police detectives, Szarwas, Goggin, and Lester arrested DeLucia and Montella. The detectives' testimony indicated that they made the arrest inside an apartment building on Queens Boulevard in which an establishment called Pep McGuire's Cabaret was located. Detective Szarwas further testified that he saw Montella attempting with a screwdriver to open a rear entrance door that led from the hallway of the apartment building into Pep McGuire's Cabaret. Montella testified that he and DeLucia were innocently walking through the alleyway bordering the apartment building on their way to Montella's parked car; that the detectives came upon them in the alleyway, opened the door leading into the building and pushed them inside; and that Detective Szarwas found the screwdriver on the floor in the hallway and attempted to place it in Montella's hands. He testified that although they had been customers at Pep McGuire's a few hours earlier he and DeLucia had never been in this part of the building before the detectives pushed them in, were not carrying the screwdriver, and had no intention of burglarizing the premises. Various photographs and descriptions of the hallway of the apartment building were introduced into evidence by both the prosecutor and the defense counsel so as to familiarize the jury with this area where the alleged crimes took place.

As the case was presented to the jury their main deliberations inevitably must have been directed toward resolving the conflict between the testimony of the detectives and that of Montella. The jury received the case at 10:40 A.M. on May 2, 1963, made requests for exhibits and for rereading of testimony, and deliberated continuously, excluding the usual periods for meals, until 10:45 P.M. when it returned its verdict that both

DeLucia and Montella were guilty as charged on both counts.

As the jury was leaving the courtroom after giving its verdict, counsel for appellants had occasion to speak to several jurors and learned from them that during the trial a number of the jurors had visited the scene of the crimes, which was only about one block from the building in which the trial was being held, and reenacted the crimes there. There was no official view of the premises, and court and counsel had been unaware of this clandestine one.

The investigation, mentioned above, resulted in the obtaining of sworn affidavits from five of the jurors. These statements give a fairly clear picture of what took place during the unauthorized view and of the effect the jurors' excursion had upon the jury's deliberations.

Juror Nick Kushner stated that he did not visit the scene. He said that a Mrs. Margolin, one of the jurors, had initiated the visit and that after she returned she attempted, in the jury room, to influence others as to the guilt of the appellants. It was his opinion that she had influenced at least five of the other jurors who had been in favor of voting for acquittal.

Juror Yves LeBris stated that he was one of the jurors who visited the scene in order to clarify some of the testimony. He said that the result of his visit was that "it helped influence me" in coming to a decision.

Juror Nicholas S. Johnson testified that he visited the scene with Mrs. Margolin and some other jurors and reenacted some of the testimony. He also attempted to verify a point defense counsel had been trying to make on cross-examination. He said that he recalled seeing Mrs. Margolin talking to one or more jurors in the jury room about the visit.

Juror John Ristuccia stated that he did not visit the scene but he knew that Mrs. Margolin had gone. He said that the result of her going to the scene "must have assisted her in arriving at the conclusion that these two men were guilty."

Juror Paul Herde stated that he did not visit the scene but he recalled that Mrs. Margolin had gone. He said that he asked her about the visit when she returned but could not recall what she stated.

Appellants claim that the failure to give them a full hearing as to whether they were prejudiced by the alleged jury misconduct violated their rights under the due process clause of the Fourteenth Amendment. In disposing of the direct appeal in the case the narrowly divided New York Court of Appeals did not reach a consideration of this issue for the majority held that there was no competent proof of jury misconduct. The only "evidence" before that court was the same evidence now before us. The majority of the divided court followed the senectuous rule [1] that jurors will not be heard to impeach their duly rendered verdict and their statements tending toward an impeachment are testimonially incompetent. Thus the Court of Appeals did not consider the issue appellants have attempted to have the courts rule upon, that of whether the alleged misconduct was prejudicial to appellants' rights under either New York law or the federal constitution.

[1] The origin of the rule is generally attributed to Lord Mansfield in Vaise v. Delaval, 1 TR 11, 99 Eng.Rep. 944, (K.B. 1785). It was adopted almost universally in the United States, see McDonald v. Pless, 238 U.S. 264, 268, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); 8 Wigmore, Evidence § 2352, at 697 (McNaughton ed. 1961). But its across-the-board application to all statements of jury misconduct has long been condemned by both courts and scholars. See, e. g., Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); State v. Kociolek, 20 N.J. 92, 118 A.2d 812, 58 A.L.R.2d 545 (1955); 8 Wigmore, Evidence § 2353 at 698–701 (McNaughton ed. 1961). For an annotation on the current state of the rule in the United States, see 58 ALR 2d 556 (1958), 5 ALR 2d Later Case Service (1965).

 In Parker v. Gladden, supra, the United States Supreme Court has unequivocally held that the right of a defendant in a state criminal prosecution to the full judicial protection of a trial by an impartial jury and the confrontation of the witnesses against him includes the right to protection from outside influences exerted upon the jurors. The Court stated that the Sixth Amendment which guarantees these protections has been "made applicable to the States through the Due Process Clause of the Fourteenth Amendment." That case, a criminal prosecution by the State of Oregon, involved prejudicial remarks made to some of the jurors during the period of the trial by a court bailiff assigned to shepherd the sequestered jury. The defendant's lack of opportunity to confront this "witness" was held to deprive him of his constitutional rights.

The information upon which the Supreme Court's knowledge of the bailiff's activities in Parker v. Gladden was based was very similar to the information before us in this case. It consisted of statements made by a number of the trial jurors as a result of an investigation based on information received from jurors after the jury verdict had been returned. The situation presented to the Supreme Court in Parker v. Gladden differed from that before us in that the Oregon courts did not exclude the statements as being testimonially incompetent because they were made by jurors; the Oregon courts weighed the effect upon the jury and decided that the activities of the bailiff described in the statements were not sufficiently prejudicial to require relief under Oregon or federal law. Parker v. Gladden, 407 P.2d 246 (Or.1965).

 The question of the competency of jurors to testify relative to what they did, or observed, or engaged in outside of the courtroom while serving as jurors has been essentially a matter of state law. The New York state courts have rendered a decision on the issue in this case, but they did so before the Supreme Court's decision in Parker v. Gladden.

Because of the close relationship between the issue of state law here involved and the newly articulated federal right, we think it proper to give the New York courts another opportunity to consider appellants' claims, see Bell v. State of Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964), Patterson v. State of appellants' right to seek federal habeas corpus again if unsuccessful before the state courts. United States ex rel. Martin v. McMann, 348 F.2d 896 (2 Cir. 1965); United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2 Cir. 1964).

The order of the district court is vacated with directions that appellants' petition be dismissed without prejudice.