Van Voorhis, J.
(dissenting). The questions at issue are (1) whether the recent decision of this court in People v. De Lucia (15 N Y 2d 294) should be overruled out of hand as wrongly decided, and the minority view made to prevail as expressed in the dissenting opinion therein or, if not, then (2) whether that decision has been overruled on Federal constitutional grounds by the United States Supreme Court in Parker v. Gladden (385 U. S. 363) as interpreted by the United States Court of Appeals, Second Circuit, in United States, ex rel. De Lucia v. McMann (373 F. 2d 759). The latter involved a Federal writ of habeas corpus sued out after the United States Supreme Court denied certiorari to review our decision in 15 N Y 2d 294 affirming the judgments.of conviction (382 U. S. 821). On the previous appeal to our court we treated as b.cing before us affidavits on a motion for new trial which set forth the same facts as were presented in the application for a Federal habeas corpus. The Second Circuit vacated the order of the District Court denying habeas corpus, with directions that the petition be dismissed without prejudice “in order to.give the. New York courts an opportunity to reconsider the previous disposition of appellants’ claims ” (373 F. 2d, supra, pp. 760, 762). The opinion of the Second Circuit indicated that it disapproved our decision at 15 N Y 2d 294, and that if we did not ovoirirqle it on reargument the Second Circuit would do so on a subsequent Federal writ of habeas corpus. AVe are thus confronted, in .-a sense, with Hobson’s choice., although the Second Circuit did say that mandating .on-the States the criminal jury trial provision of the Sixth Amendment to the United States Cons-ti *281 tution was a “newly articulated federal right ” and implied that our view on this question was sought before a binding order was made in a later Federal habeas corpus proceeding. In deference to the Second Circuit, we granted reargument of the former appeals. The views of the Second Circuit are entitled to respect, but we are not bound by them; we are bound, on Federal questions, under the rule of stare decisis by the decisions of the Supreme Court. That means that we- are bound by Parker v. Gladden (385 U. S. 363), but not by .the views expressed in the opinion in United States ex rel. De Lucia v. McMann (373 F. 2d 759).
.The majority -opinion of this court on reargument appears to hold both that our original decision affirming these convictions was wrong, and that it was overruled- by the Supreme Court in Parker v. Gladden. I think that our former decision was right and that it does not conflict with Parker v. Gladden. If the facts had been the same as in the Parker case, our original decision would have been different under established New York •law.
■ What Avas new about the Parker case is that it held the trial by jury requirement of the Sixth Amendment to the United States. Constitution .to have been mandated on. the States by the Fourteenth Amendment. That, in itself, has nothing to do with whether jurors shall be allowed' to impeach their own verdict.- We are not concerned now Avith whether Parker v. Gladden means that our State constitutional guarantee of trial by jury (art. 1, § 2), and the decisions construing it, have wholly or partly been superseded by the Sixth Amendment to the United States Constitution, nor whether indictment -by Grand Jury in the case of felonies has been rendered inviolate against State action by the Fifth Amendment (it has been superseded, for practical purposes, by information by the District Attorney in about three fourths of the States), nor. Avhether the Seventh Amendment forbids the States to limit or abolish trial by jury in civil suits. at common law where the value in controversy exceeds $20, although these questions are foreshadowed by that important decision.. ,
The point at issue here is whether, assuming as Ave must, that this portion of the Sixth Amendment is mandated on the States, there is anything in it which requires the acceptance of *282 affidavits by jxuure to impeach their verdict. The majority opinion intimates that there is no such requirement in every case, without stating where to draw the line. Parker v. Gladden held that the Sixth Amendment, mandated on the States, did require a new trial where the court bailiff, having the trial jury in charge, stated to one of the jurors in the presence of others that the defendant was guilty and that if there were anything wrong in finding him guilty the Supreme Court would correct it. The court said that these expressions ‘ ‘ were ‘ private talk ’ fending to reach the jury by ‘ outside influence. ’ Patterson v. Colorado, 205 U. S. 454, 462 ” (385 U. S. supra, p. 364). That has long been the law in New York State, under tire corresponding provision of the New York State Constitution (art. 1, § 2). Thus in Wilkins v. Abbey (168 Misc. 416) affidavits of jurors were received and considered which .showed misconduct on the part of the deputy sheriff in charge of the jury who tried to influence their verdict. After stating that it is well settled on grounds of public policy that jurors will not be permitted to disclose their own misconduct, the court said (p. 420): “ There is a legitimate distinction between the acts of the jurors themselves during the trial of the case, even outside the jury room, or the deliberations of the jury in the jury room, and the influences which are called into play by outside forces and which are extraneous to their deliberations. Sound public policy is promoted by shielding the discussions of the jury from disclosure but this policy does not require that force brOnght to bear improperly on the jury from without shall be similarly protected against disclosure. (Ayres v. Village of Hammondsport, 13 Civ. Prac. Rep. 236, 77 N. Y. St Repr. 706.) There is little danger, in my judgment, that the recognition of such a rule will encourage the unsuccessful litigant to attempt to persuade jurors to swear to misconduct on the part of officers having them in charge, and none at all that freedom of discussion in the jury room will be impaired. * * * When an officer has threatened or coerced a jury in any way, he should not be shielded by a rule that was framed to meet another situation and a party whom such acts may reasonably be supposed to have prejudiced should not be deprived of what may be the only means of securing evidence of such misconduct.” (Italics supplied.)
*283 In Schrader v. Gertner (282 App. Div. 1064), the Second Department said (pp, 1064-106,5): ‘ ‘ Although it is a well-settled rule o,f public policy that affidavits of jurors will not be received to impeach the verdict (People v. Sprague, 217 N. Y. 373, 381; Dalrymple. v. Williams, 63 N. Y. 361; Williams v. Montgomery, 60 N. Y. 648; Payne v. Burke, 236 App. Div. 527; Clum v. Smith, 5 Hill 560), they may he considered where they show misconduct on the part of other persons in their dealings with the jurors (Green v. Telfair, 11 How. Prac. 260; Reynolds v. Champlain Transp. Co., 9 How. Prac. 7; Thomas v. Chapman, 45 Barb. 98; Wiggins v. Downer, 67 How. Prac, 65; Wilkins v. Abbey, 168 Misc. 416; People v. Smith, 187 N. Y. S. 836). ”
Fisch on New York Evidence (1959 ed-, p, 184) says that the rule does not “forbid the introduction o.f their testimony or affidavits to establish the misconduct of a third person in regard to the jurors ”, and the same is stated in Richardson on Evidence (9th ed., p. 434).
It is thus clear that the New York rule is of long standing that jurors* affidavits are admissible under the circumstances presented in Parker v. Gladden, and there is nothing in the opinion or decision therein which indicates that the Supreme Court would have failed to draw a similar distinction or intended to compel the use of testimony by jurors to impeach their verdict to a greater extent than has been done in this State all along.
Not being constrained by Parker v, Gladden, the question remains whether we should hold that our carefully considered decision in 1965 at 15 N Y 2d 294 should be overruled, and what Wigmore described as. the “firmly settled” law (except in a few jurisdictions) changed on account of some alteration in. a public policy which dates from the decision by Lord Makseibld in 1785 in Vaise v. Delaval (1 Term Rep. 11). This rule did not spread to every jurisdiction in the United States, with the exception of Iowa (Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195) and a few others, merely out of regard for the name of Lord Maxsfield or due to some esoteric doctrine that a witness shall not be beard to allege his own turpitude. As was said in Payne v. Burke (236 App. Div. 527, 529) by Justice EptidoMK, who had an unusually huge trial experience as lawyer before coming to the Fourth Department: ‘ • The reason for this rule is founded on sound public policy. If jurors, after *284 they have.been discharged and.have mingled with the public, were permitted to discredit' the verdict which they had solemnly! rendered in open court, no verdict would-be safe, ánd judg1-. ments would rest on a very uncertain foundation. • The consequences of such practice would-be most mischievous.; it would' open the door for tampering with jurors,. and would- make, it easy for a corrupt or. dissatisfied-juror to- destroy the very verdict to which he had deliberately given his assent under the. sanction of an oath. Jurors would constantly bé importtined by dissatisfied litigants, and pressed for affidavits upon which their verdict might be assailed. ■ Every trial lawyer knows- full:well how easy it would be to find some complacent juror.-who. would yield to such appeal.- If such practice were.countenanced, few, if any, verdicts would survive, and there would be no end to. litigation. (McDonald v. Pless, 238. U. S. 264; Tyler v. Stevens, 4 N. H. 116; Blodgett v. Park, 76 id. 435; Tenny v. Evans, 13 id. 462; Keith v. State, 7 Okla. Cr. 156.) ”
The affidavit of a juror, held to be incompetent in Payne v. Burke, charged that a fellow juror had, in a conversation in the street, stated that he “ had it in. for ” plaintiff and that he “ was going to beat ” him irrespective of the evidence.
That the rule extends to occurrences out of as well as within the juryroom is also manifested in Davis v. Lorenzo’s, Inc. (258 App. Div. 933). There, as here, affidavits were submitted on á motion to set aside the verdict of the jury upon the ground that one of its members had made an outside investigation. The court said:-“ Statements made outside of court by a juror following the trial, as well as affidavits made by a juror after the trial, may not be used to impeach the verdict of the jury. (People v. Sprague, 217 N. Y. 373; Gregory v. Bijou Theatre Co., 138 App. Div. 590; Payne v. Burke, 236 id. 527.) All concur. ’ ’
Lord Mansfield himself was clearly aware of the reason for the role. In Vaise v. Delaval (supra) and in Owen v. Warburton (1 Bos. & Pul. N. R. 326, 329-330) it was sought to impeach verdicts on the ground that the jury had decided the cases by chance. In the case last cited Lord Mansfield said: “ The affidavit of a juryman [to the jury’s misconduct] cannot be received. It is singular, indeed, that almost the only evidence of which the case admits, should be shut out; but, considering *285 the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law, that a juryman might set aside a verdict by such evidence, it might sometimes happen, that a juryman, being a friend to one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with a view afterwards to set aside the verdict by his own affidavit, if the decision should be against him. ’ ’
The United States Supreme Court was aware of these factors in 1915 in deciding McDonald v. Pless (238 U. S. 264, 267-268): “Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference.”
These considerations apply equally to receiving affidavits or testimony of jurors to impeach their verdict by showing that they visited the scene of a crime or place of a disputed transaction as they do to discussion in the jury room. Each equally opens the way to sinister and ulterior attempts by corrupt defeated litigants to impugn adverse verdicts by unscrupulous methods. Few rules are more deeply embedded in the jurisprudence of the State than this one designed to free jurors from harassment in the performance of their duties and to protect the integrity of their verdicts (Coster v. Merest, 3 Brod. & Bing. 272; Clum v. Smith, 5 Hill 560; Williams v. Montgomery, 60 N. Y. 648; Dalrymple v. Williams, 63 N. Y. 361; Mitchell v. Carter, 14 Hun 448; Dean v. Mayor, 29 App. Div. 350; People v. Sprague, 217 N. Y. 373; Payne v. Burke, supra; Haight v. City of Elmira, 42 App. Div. 391, 394; People v. Gallagher, 75 App. Div. 39; Perry v. New York Cent. & H. R. R. R. Co., 169 App, Div. 83; Schrader v. Gertner, supra; Fahey v. South Nassau *286 Communities. Hosp., 197 Misc. 490, 492; Wilkins v. Abbey, supra; Atikian v. Chang Wen Ti, 153 Misc, 881, 882),
Exceptions are recognized which fall outside, of the scope and policy of the rule, such as. where the foreman of a jury by mistake announces a verdict different from that agreed upon by the jury (Dalryonple v. Williams, supra), where jurors’ statements would show misconduct on the part of other persons in their dealings with the jurors (Schrader v, Gertner, supra), where, before a juror was accepted he concealed facts which it was his duty to disclose and which, if made known, doubtless would have resulted in his being excused (McHugh v. Jones, 258 App. Div. 111) and possibly some other restricted situations. This does not reflect “ across-the-board ” application to all statements o.f jury misconduct (United, States ex rel. De Lucia v. McMann, supra, p. 761, n. 1). Like many other legal principles, this rule represents a choice between evils. Its widespread acceptance attests a sound foundation in experience. As in the case of most legal rules, minor faults can be found in it (e.g. State, v. Kociolek, 20 N. J. 92). It is said that a rule against self-stultification by a witness makes no sense. The use o.f that maxim in formulating the rule was merely an Englishman’s instinct to rationalize (often imperfectly) a strong common sense. The rule is said to be, unequal in that it would admit testimony of an eavesdropper who would be subject to, punishment by contempt for overhearing a jury’s deliberations. (Matter of Choate, 18 N. Y. Civ. Pro. Rep, 180, 24 Abb. N. C. 430, cert, dsmd. sub nom. People ex rel. Choate v. Barrett, 56 Hun 351, affd. 121 N. Y, 678). This could easily be avoided by excluding the testimony of any person who. is spying on their proceedings as was held or implied in Reich v. Thompson (346 Mo. 577) and Acosta v. State (126 Tex. Crim. Rep. 618).
There must certainly be limits to. post-verdict inquisitions of jurors to determine whether their verdict has been “ contaminated.” The New Jersey Supreme Court (Brennan, J.) intimated in State v. Kociolek that jurors’ testimony should only be excluded as to their mental processes. The majority opinion on reargument of the case at bar seems not to go quite so far by suggesting, although not stating, that, jurors should be subject to questioning afterward with regard to anything except *287 “jury room deliberatious.” This introduces a host of difficulties. Assume, for example, that jurors chose to arrive at a verdict by the flip of a coin or by drawing lot. That would be something occurring in the juryroom. It was what gave rise to the rule in the beginning under Lord Maxsfield. Under the majority ruling herein, would jurors’ affidavits or testimony concerning that be admissible? It is well known that in automobile negligence cases most verdicts are, to a greater or less degree, compromise verdicts. That is not done strictly according to law, and where proved is ground for reversal (Kepner v. Barry, 24 A D 2d 825). In the ease of Wright v. Illinois & Miss. Tel. Co. (20 Iowa 195, 210-212, supra), decided in 1866, which has ever since been the chief arsenal of attack upon this rule, it was said in the opinion that jurors should not be questioned concerning matters that ‘ ‘ essentially inhere in the verdict itself” but that this would not preclude questioning the jurors concerning whether “the verdict was determined by aggregation and average or by lot”. (Italics supplied.) The Iowa rule is to admit jurors’ affidavits to prove misconduct in determining damages by average (Forshee v. Abrams, 2 Iowa 571; Manix v. Malony, 7 Iowa 81; Wright v. Illinois & Miss. Tel. Co., supra). Jurors are constantly importuned by Trial Judges to compromise their differences where they can conscientiously do so, and, if members of the jury could be interrogated after verdict in every case in order to determine whether they had added the damages to which each thought the plaintiff was entitled and divided by 12, or had sacrificed opinions previously expressed regarding liability or nonliability in order to extract concessions from other jurors concerning the amount of the verdict or the awarding of some recovery, the negligence court calendars would be even more congested than they are. One of the advantages asserted in favor of jury trials is that jurors bring to bear upon the point at issue their varied Individual experiences of life. Are verdicts to be set aside if afterward it is made to appear that they were irregularly reached by the recounting in conference of personal experiences bearing upon the questions of fact to be decided? Are they to be interrogated afterwards concerning whether any of them may have, in effect, testified to the other jurors as expert witnesses having special knowledge *288 in particular fields of endeavor? These arc not fanciful instances. All of them have resulted in verdicts being set aside in the comparatively few jurisdictions where the rule to which we adhered in People v. De Lucia (15 N Y 2d 294, supra) has not been followed. Do the majority mean that the jurors cannot be interrogated afterwards concerning any juryroom deliberations, or is this principle to be subject to exceptions “ where a patent injustice to a defendant was present ”? (quoting from majority opinion). Is the term “ juryroom deliberations ” equivalent in meaning to matters “inherent in the verdict ” which is the usual expression employed by those opposed to the rule, and may even refer to the ‘ ‘ mental processes ” of the jurors (cf. State v. Kociolek, supra)? All of the decisions, for the rule and against it, appear to be agreed that jurors cannot be questioned concerning faulty reasoning which may have produced a verdict, but where is the line to be drawn between defective reasoning and extraneous factors, among which the cases against the rule generally combine compromise verdicts, personal experiences or expert knowledge of jurors, biases for or against particular kinds of people more or less resembling parties to the action, viewing the place of the transaction, and a multitude of other “ extraneous factors ” which are to be distinguished from and contrasted with what is merely “wrong reasoning.” The court calendars, it seems to me, are congested enough as it is without opening all of these post-verdict fields of investigation and litigation.
Our decision at 15 N Y 2d 294 was right and the judgments of conviction should be affirmed.
Chief Judge Fuld and Judges Burke and Breitel concur with Judge Keating; Judge Van Voorhis dissents and votes to affirm in an opinion in which Judges Scileppi and Bergan concur.
Upon reargument: Determination withheld and matter remitted to the Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.